H. Kent DOBBS, Jr., and Constance
B. Dobbs, Plaintiffs/Appellants,

v.

Jack GUENTHER, Valerie Guenther, J.M.
Carnes, John K. Matt, Rivergate Toyo-
ta, Inc., and Performance Petroplex,
Inc., Defendants/Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

Oct. 21, 1992.

Permission to Appeal Denied by
Supreme Court Jan. 19, 1993.

owned automobile dealerships in Nashville. After he was fired as the general manager of one of the dealerships, one of the shareholders filed suit in the Chancery Court for Davidson County seeking to invalidate the stock repurchase agreements and noncompetition agreements and to rescind a conveyance of real property. The trial court dismissed the complaint finding that it failed to state claims upon which relief could be granted. The shareholder has appealed. We have determined that the complaint states several claims upon which relief can be granted and, therefore, vacate portions of the trial court's order.

### I.

Rivergate Toyota, Inc. ("Rivergate Toyota") was incorporated in Texas on September 20, 1983. Jack Guenther was its president, and H. Kent Dobbs, Jr. its vice president. The board of directors included Mr. Guenther, Mr. Dobbs, J.M. Carnes, and John K. Matt. All the corporation's outstanding shares were owned by its directors.[1] The purpose of the corporation was to operate a retail automobile business.

On December 1, 1983, the directors formed a Tennessee partnership called "J Co." for the purpose of purchasing real property on Gallatin Road in Davidson County where an automobile dealership was located. The directors' interests in the partnership were identical to their ownership of stock in Rivergate Toyota.[2] Mr. Guenther was named the managing partner.

On the same day they signed the partnership agreement, the directors also signed an "Agreement Restricting Transferability of Shares" with regard to Rivergate Toyota ("Rivergate Agreement"). Paragraph 3 of the agreement described eight events whose occurrence would require a shareholder to sell his or her stock back to the corporation. Paragraph 3(h) specifically dealt with a shareholder's termination of

Thomas L. Reed, Jr., Reed & Watson, Murfreesboro, for plaintiffs/appellants.

Albert F. Moore, Neal & Harwell, Nashville, for defendants/appellees.

## OPINION

KOCH, Judge.

This appeal involves a dispute among the shareholders of two corporations that

---

1. Of the 350,000 shares outstanding, Mr. Guenther owned 178,500 shares (51%), Mr. Dobbs 87,500 shares (25%), Mr. Carnes 57,750 (16.5), and Mr. Matt 26,250 shares (7.5%).

2. Mr. Dobbs later acquired a portion of Mr. Carnes' interest in J Co.

employment with the corporation. Paragraph 7 and Exhibit B also contained a formula for determining the price of the shares.

The Rivergate Agreement also governed the directors' interests in J Co. Paragraph 16 stated that "[t]his agreement shall apply for all purposes to the J Co. Partnership Agreement dated December 1, 1983 ..." In addition, Exhibit B, ¶ 2 stated that "[t]he purchase price for J Co. shall be $1,225,000, until such time as the Shareholders shall agree in writing to a different price." Exhibit B, ¶ 3 also provided that the purchase price for either the shares or the interest in the partnership would "be paid in the form of Covenant Not to Compete compensation in equal payments" over four years.

Two days after the directors signed the partnership agreement and the Rivergate Agreement, J Co. purchased the seven-acre tract on Gallatin Road where the Rivergate Toyota dealership was located. Mr. Dobbs served as the general manager of the dealership. Between 1983 and 1985, J Co. made over $500,000 of improvements to the property and also purchased two contiguous tracts of property (the "Burger King" tract and the "Borchert" tract) for $346,-500.

On March 31, 1989, Messers. Guenther, Dobbs, and Carnes formed another Texas corporation named Performance Petroplex, Inc. ("Performance Petroplex"). The purpose of this corporation was to operate another automobile dealership called Lexus of Nashville. Mr. Guenther and Mr. Dobbs were corporate officers and served as directors along with Mr. Carnes. Mr. Guenther and his wife owned 58.5% of Performance Petroplex's outstanding shares, while Mr. Dobbs owned 30%, and Mr. Carnes 11.5%. Mr. Dobbs claims to have invested $165,000 cash in Performance Petroplex.

Mr. Dobbs asserts in the complaint that he was originally trying to obtain the Lexus franchise for himself but that he "permitted the Lexis [sic] dealership to go to Performance Petroplex, Inc." He also asserts that in January 1990, he "took" his business associates an offer to purchase Rivergate Toyota for $1,000,000 plus the value of all the corporate assets and that the other shareholders rejected the offer.

On January 31, 1990, J Co. quitclaimed its interest in the Borchert tract to L Co., another partnership established by Messers. Guether, Dobbs, and Carnes. The relationship between L Co. and Performance Petroplex was the same as the relationship between J Co. and Rivergate Toyota. Messers. Guenther, Dobbs, and Carnes apparently had the same interest in L Co. that they had in Performance Petroplex.

On March 4, 1990, Messers. Guenther, Dobbs, and Carnes signed another "Agreement Restricting Transfer of Shares" with regard to Performance Petroplex ("Performance Petroplex Agreement"). The terms of this agreement were substantially similar to the Rivergate Agreement. Two days later, Mr. and Mrs. Dobbs conveyed a piece of property (the "Chief's" tract) adjacent to J Co.'s property to J Co. for $184,750. They now assert in the complaint that the sales price for the Chief's tract was far below either its fair market value or its actual value since the Chief's tract provided the only street frontage for their other property.

Later in March 1990, Mr. Dobbs resigned as general manager of the Rivergate Toyota dealership in order to become the general manager of Lexus of Nashville. For reasons not apparent in the record, Mr. Dobbs was fired as general manager of Lexus of Nashville in May 1990. Following Mr. Dobbs's termination, Messers. Guenther, Carnes, and Matt insisted that they had the right to repurchase his interest in Rivergate Toyota, Lexus of Nashville, J Co., and L Co. under the terms of the Rivergate Agreement and the Performance Petroplex Agreement.

In December 1990, Mr. and Mrs. Dobbs filed a disjointed, 13–page complaint, alleging in vague terms that Messers. Guenther, Carnes, and Matt had induced him (1) to invest in Performance Petroplex, (2) to convey the Chief's tract to J Co., and (3) to sign the Performance Petroplex Agreement when they had already decided to terminate him as an employee. He asserted that

these transactions were part of a fraudulent scheme to obtain his property at less than its fair market value and to strip him of his interests in the dealerships.

The defendants filed motions to dismiss and motions for a more definite statement. On May 28, 1991, Mr. and Mrs. Dobbs filed an amended complaint. This complaint was fourteen pages long and was not much of an improvement over their earlier complaint. On July 24, 1991, the trial court filed a memorandum opinion stating:

> It is difficult for the Court to understand the factual allegations of the complaint. It is impossible for the Court to understand how those factual allegations entitle the plaintiffs to relief. The legal grounds for relief are stated in conclusory terms. Though lengthy, the plaintiffs' amended complaint fails to set forth adequate facts to support their vague assertions of fraud and unfairness. The plaintiffs have not alleged that there has been action taken against them which warrants either a declaratory judgment or a finding that a cause of action has accrued. The substance of the amended complaint appears to be a request that the Court step in and fix a situation that is not yet damaged. For the most part the plaintiffs seem to be seeking a declaratory ruling on what their rights and liabilities might be at some unspecified time in the future. This is not an appropriate case for the issuance of a declaratory judgment.

On August 1, 1991, the trial court entered its order dismissing the complaint for failure to state a claim upon which relief can be granted.

## II.

■ The sole purpose of a Tenn.R.Civ.P. 12.02(6) motion to dismiss is to test the legal sufficiency of the complaint. *Sanders v. Vinson*, 558 S.W.2d 838, 840 (Tenn.

1977); *Holloway v. Putnam County*, 534 S.W.2d 292, 296 (Tenn.1976). These motions are not favored, *see Moore v. Bell*, 187 Tenn. 366, 369, 215 S.W.2d 787, 789 (1948), and are now rarely granted in light of the liberal pleading standards in the Tennessee Rules of Civil Procedure.[3] *See Barish v. Metropolitan Gov't*, 627 S.W.2d 953, 954 (Tenn.Ct.App.1981); 5A Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* §§ 1356 & 1357 (2d ed. 1990) ("Wright & Miller").

Tenn.R.Civ.P. 12.02(6) motions are not designed to correct inartfully worded pleadings. Wright & Miller § 1356, at 296. And so a complaint should not be dismissed, no matter how poorly drafted, if it states a cause of action. *Paschall's, Inc. v. Dozier*, 219 Tenn. 45, 50–51, 407 S.W.2d 150, 152 (1966); *Collier v. Slayden Bros. Ltd. Partnership*, 712 S.W.2d 106, 108 (Tenn.Ct.App.1985). Dismissal under Tenn. R.Civ.P. 12.02(6) is warranted only when no set of facts will entitle the plaintiff to relief, *Pemberton v. American Distilled Spirits Co.*, 664 S.W.2d 690, 691 (Tenn. 1984), or when the complaint is totally lacking in clarity and specificity. *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn.1986).

■ While it is not our role to create claims where none exist, *Donaldson v. Donaldson*, 557 S.W.2d 60, 62 (Tenn.1977), we must always look to the substance of a pleading rather than to its form. *Usrey v. Lewis*, 553 S.W.2d 612, 614 (Tenn.Ct.App. 1977). Thus, when a complaint is tested by a Tenn.R.Civ.P. 12.02(6) motion to dismiss, we must take all the well-pleaded, material factual allegations as true,[4] and we must construe the complaint liberally in the plaintiff's favor. *Lewis v. Allen*, 698 S.W.2d 58, 59 (Tenn.1985); *Holloway v. Putnam County*, 534 S.W.2d at 296; *Lilly*

---

3. Tenn.R.Civ.P. 8.01 requires only that claims for relief be embodied in a "short and plain statement of the claim showing that the pleader is entitled to relief." Tenn.R.Civ.P. 8.06 states that "[a]ll pleadings shall be so construed as to do substantial justice," and Tenn.R.Civ.P. 1 provides, in part, that the procedural rules should

"be construed to secure the just, speedy and inexpensive determination of every action."

4. We are not required to consider factual inferences or legal conclusions as true. *Elliott v. Dollar Gen. Corp.*, 225 Tenn. 658, 664, 475 S.W.2d 651, 653 (1971).

*v. Smith,* 790 S.W.2d 539, 540 (Tenn.Ct. App.1990).

## III.

The amended complaint is poorly drafted. Like the trial court, we have found its factual allegations difficult to understand and have also labored to reconcile them with the claims for relief. However, placing the interests of the litigants ahead of the sloppiness of their lawyer, we have determined that the complaint is not totally lacking in clarity and that it makes out several intelligible claims for relief.

### A.

### *Claims Based on Fraud*

█ We turn first to the claims based on fraud. Notwithstanding Tenn.R.Civ.P. 9.02's particularity requirement,[5] the legal sufficiency of these claims should be determined in light of Tenn.R.Civ.P. 8.01's liberal pleading standards. *Petty v. Call,* 599 S.W.2d 791, 795 (Tenn.1980); Tenn.R.Civ.P. 9 committee cmt. Thus, fraud claims will survive a Tenn.R.Civ.P. 12.02(6) motion to dismiss if they demonstrate that a claimant would be entitled to relief under some set of facts.

█ The fraud claims in this complaint are based on Mr. Dobbs's assertion that his former business associates set out to cheat him out of his interest in the two automobile dealerships after they decided to fire him. The fraud, according to the complaint, took two forms. First, the defendants led Mr. Dobbs "to believe that all was well" even though they had already decided to fire him in order to induce him (1) to sign the Performance Petroplex Agreement which limited the value of his interest in Performance Petroplex and L Co., (2) to convey the Chief's tract to J Co., (3) to invest $165,000 in Performance Petroplex, and (4) to transfer title of the Borchert tract from J Co. to L Co. [Amended Complaint One, ¶¶ 11, 13, & 19]. Second, the defendants also attempted to undervalue his interest in the corporations and part-

nerships by fraudulently using a false set of business records to compute the dealerships' net worth. [Amended Complaint One, ¶¶ 24 & 25].

█ Actions for fraud contain four elements: (1) an intentional misrepresentation of a material fact, (2) knowledge of the representation's falsity, and (3) an injury caused by reasonable reliance on the representation. The fourth element requires that the misrepresentation involve a past or existing fact or, in the case of promissory fraud, that it involve a promise of future action with no present intent to perform. *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank,* 835 S.W.2d 25, 28 (Tenn.Ct. App.1992); *Stacks v. Saunders,* 812 S.W.2d 587, 592 (Tenn.Ct.App.1990). Nondisclosure will give rise to a claim for fraud when the defendant has a duty to disclose and when the matters not disclosed are material. *Gray v. Boyle Inv. Co.,* 803 S.W.2d 678, 683 (Tenn.Ct.App.1990); *Piccadilly Square v. Intercontinental Constr. Co.,* 782 S.W.2d 178, 184 (Tenn.Ct.App. 1989).

The complaint contains factual allegations concerning each required element, and these allegations are sufficient to provide the defendants with fair notice of the nature of the claims made against them. If Mr. Dobbs is able to prove that the defendants led him to believe that "all was well" after they had already decided to fire him, he will be entitled (1) to set aside the conveyance of the Chief's tract, (2) to a return of his $165,000 investment in Performance Petroplex if he made the investment after the defendants assured him that "all was well", and (3) to have his interest in Performance Petroplex determined without reference to the Performance Petroplex Agreement's valuation provisions.

In the complaint's present form, the fraud allegations have no bearing on the validity of the Rivergate Agreement, the J Co. partnership agreement, or the L Co. partnership agreement. They also fail to state a claim upon which relief can be

---

5. Tenn.R.Civ.P. 9.02 provides, in part, that "[i]n all averments of fraud or mistake, the circum- stances constituting fraud or mistake shall be stated with particularity."

granted with regard to the transfer of the title to the Borchert tract from J Co. to L Co. since J Co. acquired the Borchert tract before the alleged fraud took place and, accordingly, did not require Mr. Dobbs's approval to convey its own property to L Co.

### B.

### *The Declaratory Judgment Claims*

The complaint also requests a declaratory judgment concerning Mr. Dobbs's rights and obligations under the Rivergate Agreement, the Performance Petroplex Agreement (assuming it was not procured by fraud), and the two partnership agreements. The trial court dismissed these claims because it found that the complaint requested "a declaratory ruling on what their rights and liabilities might be at some unspecified time in the future." We do not agree. The complaint demonstrates that Mr. and Mrs. Dobbs have a real interest in this litigation and that their claims involve present rights that have accrued under presently existing facts.

■ Tenn.Code Ann. § 29–14–103 (1980) permits persons interested in a written contract to obtain a declaratory judgment concerning their rights, status, or other legal relations under the contract. While Tenn. Code Ann. § 29–14–113 (1980) requires that the declaratory judgment statutes be construed liberally, the courts will grant declaratory relief only to parties who have a real interest in the litigation, *Memphis Publishing Co. v. City of Memphis*, 513 S.W.2d 511, 512 (Tenn.1974); *Cummings v. Beeler*, 189 Tenn. 151, 156, 223 S.W.2d 913, 915 (1949), and when the case involves present rights that have accrued under presently existing facts. *West v. Carr*, 212 Tenn. 367, 380, 370 S.W.2d 469, 475 (1963), *cert. denied*, 378 U.S. 557, 84 S.Ct. 1908, 12 L.Ed.2d 1034 (1964); *Snelling & Snelling, Inc. v. Parnell*, 59 Tenn.App. 258, 271, 440 S.W.2d 23, 29 (1968). The complaint and the attached exhibits demonstrate the existence of a justiciable dispute under the declaratory judgment statutes.

Both the Rivergate Agreement and the Performance Petroplex Agreement required Mr. Dobbs to tender his shares back to the corporations if he was terminated from employment. The agreements also contained provisions governing the valuation of his shares as well as his interest in J Co.[6]

Mr. Dobbs alleged that he resigned as Rivergate Toyota's general manager in March 1990 [Amended Complaint One ¶ 11] and that he was fired as general manager of Lexus of Nashville in May 1990. [Amended Complaint One ¶ 12]. He also alleged that after his termination, the defendants (1) have attempted to buy his interest in J Co. using the valuation provisions in the Rivergate Agreement [Amended Complaint One ¶ 10(b)], (2) have attempted to purchase his Rivergate Toyota stock for nothing [Amended Complaint One ¶ 21], (3) have attempted to acquire his interest in the Borchert tract for $200,000 instead of its fair market value [Amended Complaint One ¶ 10(1)], and (4) have offered to purchase his interest in Performance Petroplex for $165,000 [Amended Complaint One ¶ 31].

■ These allegations portray an actual, existing controversy between Mr. Dobbs and his former business associates concerning his rights and obligations under their various agreements. A judicial construction of the agreements will materially advance the ultimate resolution of the dispute. Accordingly, we find that Mr. Dobbs in entitled to a declaratory judgment on the following issues:

(1) Whether the various agreements are governed by either Tennessee or Texas law.

(2) Whether the Rivergate Agreement's repurchase provision conflicts with the J Co. partnership agreement.

(3) Whether the Rivergate Agreement and the Performance Petroplex Agreement, assuming it was not procured by

---

6. The Performance Petroplex Agreement does not specifically extend its valuation provisions to Mr. Dobbs's interest in L Co. in the same way that the Rivergate Agreement applies to the valuation of J Co.

fraud, require Mr. Dobbs to sell his interest in Rivergate Toyota, Performance Petroplex, J Co., and L Co. to the defendants.

(4) Whether a novation of J Co.'s purchase price defined in Exhibit B, ¶ 2 of the Rivergate Agreement occurred prior to the date on which Mr. Dobbs was terminated.

(5) Whether the Rivergate Agreement governs the valuation of Mr. Dobbs's interest in J Co. if he is required to sell his interest to the defendants.

■ We also find that several of Mr. Dobbs's requests for declaratory relief do not state claims upon which relief can be granted. In the absence of mistake or fraud, the courts will not create or rewrite a contract simply because its terms are harsh or because one of the parties was unwise in agreeing to them. *Petty v. Sloan*, 197 Tenn. 630, 639–40, 277 S.W.2d 355, 359 (1955); *Jaffe v. Bolton*, 817 S.W.2d 19, 25 (Tenn.Ct.App.1991); *Carrington v. W.A. Soefker & Son, Inc.*, 624 S.W.2d 894, 897 (Tenn.Ct.App.1981). Mr. Dobbs's claims that he should not be required to abide by portions of the Rivergate Agreement or·the Performance Petroplex Agreement because they are "inequitable" or "unfair" do not state claims upon which relief can be granted.

Mr. Dobbs also claims that the Rivergate Agreement lacks "mutuality" because he was the only contracting party to whom the termination of employment provisions applied. We assume that Mr. Dobbs is referring to "mutuality of obligation" which simply embodies the idea that each contracting party must be under a legal duty to the other. 1A Arthur L. Corbin, *Corbin on Contracts* § 152, at 4 (1963) ("Corbin"); *Dark Tobacco Growers' Co-op Ass'n v. Mason*, 150 Tenn. 228, 251, 263 S.W. 60, 67 (1924).

■ Consideration is a necessary ingredient for every contract, *Campbell v. Matlock*, 749 S.W.2d 748, 751 (Tenn.Ct. App.1987), but mutuality of obligation is not unless lack of mutuality will leave one party without consideration for his or her promise. Corbin § 152 n. 5; *Jeffers v.*

*Hawn*, 186 Tenn. 530, 534, 212 S.W.2d 368, 370 (1948). That portions of a contract may apply to one party but not to others has no bearing on the mutuality of parties' obligations as long as consideration exists and all parties are bound to honor the contract. Based on the complaint's allegations and the terms of the Rivergate Agreement, we find that adequate consideration exists and that the defendants, like Mr. Dobbs, were bound by the agreement. Accordingly, the allegations concerning lack of mutuality fail to state a claim upon which relief can be granted.

### C.

### *The Noncompetition Agreement Claims*

■ The complaint alleged that the Rivergate Agreement and the Performance Petroplex Agreement contained noncompetition agreements and requested that these agreements be declared invalid. [Amended Complaint One ¶ 33]. We find that Mr. Dobbs failed to state a claim upon which relief can be granted because neither agreement contains any language that can reasonably be construed as a noncompetition agreement.

The Rivergate Agreement contains only two references to a noncompetition agreement. Exhibit B, ¶¶ 1.A and 3 provide:

1.A. For the period of 1/1/84 thru 12/31/84—the purchase price shall be an amount equal to the·purchase price set forth in that certain Purchase Agreement, dated July 31, 1983, between Tune Imports, Inc. et ux. including the Covenant Not to Compete compensation.

\* \* \* \* \* \*

3. The purchase price for the Stock as set forth in paragraph 1.B(i) or 1.B(ii)(a) and for J Co. shall be paid as provided for in Paragraph 4 of the Agreement. The purchase price for the stock as set forth in Paragraph B(ii)(b) shall be paid in the form of Covenant Not to Compete compensation in equal payments over the same time period as provided in Paragraph 4 of the Agreement, and such covenant shall contain the similar terms and provisions as set forth in Exhibit "C" to

the original Purchase Agreement dated July 31, 1983, referred to above.

The complaint contains no allegations concerning the substance of the July 31, 1983 "original purchase agreement," and the agreement itself is not appended to the complaint.

The Performance Petroplex Agreement contains only one reference to a noncompetition agreement. Exhibit B, ¶ 3 states:

> The purchase price for the Stock set forth in paragraph 1.B(i) or 1.B(ii)(a) and for L Co. shall be paid as provided for in Paragraph 4 of the Agreement. The purchase price for the Stock as set forth in paragraph b(ii)(b) shall be paid in the form of Covenant Not to Compete compensation in equal payments over the same time period as provided in Paragraph 4 of the Agreement.

The Performance Petroplex Agreement contains no reference to the July 31, 1983 "original purchase agreement."

While Mr. Dobbs alleges that he "served" as the general manager of Rivergate Toyota and Lexus of Nashville [Amended Complaint One ¶ 11], he never alleges that he signed an employment contract containing a noncompetition agreement or a separate noncompetition agreement. Without these allegations or copies of the agreements themselves, his request for review of the purported noncompetition agreements fails to state a claim upon which relief can be granted.

### D.

### *The Claim for an Accounting*

Mr. Dobbs also asserts that the trial court ignored his request for an accounting of the automobile dealerships' business affairs. [Amended Complaint One ¶ 15]. We find no merit in this argument since the trial court held that "[a]s a shareholder the plaintiff H. Kent Dobbs, Jr. has a right to inspect corporate records, and the Court has already so ordered in this case." For the purposes of his surviving claims, Mr. Dobbs' right to inspect the business records provides him with an ability to sub-

stantiate his claims, if indeed they can be substantiated.

As a shareholder in Rivergate Toyota and Performance Petroplex, Mr. Dobbs has a statutory right to inspect the corporate records [Tenn.Code Ann. § 48–26–102(a) (1988)], including the accounting records [Tenn.Code Ann. § 48–26–102(b)(2)]. These rights are reinforced by Tenn.Code Ann. § 48–26–102(e)(1) which preserves the right of shareholders engaged in litigation with a corporation to engage in discovery to the same extent as other litigants. As a partner in J Co. and L Co., Mr. Dobbs has a similar statutory right to inspect the partnership records and books of account. Tenn.Code Ann. §§ 61–1–118, –119 (1989).

The complaint contains allegations underscoring Mr. Dobbs's reasons for examining the business records. He has alleged that his former business associates used false records to calculate the value of his interests [Amended Complaint One ¶¶ 24 & 25], that they withheld necessary tax information from him [Amended Complaint One ¶ 36], and that they made improper disbursements of corporate and partnership property without his knowledge [Amended Complaint One ¶ 15].

If, in the final analysis, the trial court finds that Mr. Dobbs must sell his interests back to his former business associates, the valuation of his interests will be controlled by the Rivergate Agreement and the Performance Petroplex Agreement. These agreements, as we understand them, require that Mr. Dobbs's interests be valued as of the date of his termination. Thus, later transactions or distributions of corporate or partnership property will have no effect on the value of Mr. Dobbs's interests.

Paragraph 7.A of the Rivergate Agreement and paragraph 7(a) of the Performance Petroplex Agreement require the parties to "bear equally the costs and expenses of determining such book value, including, without limitation, the accountants' fees." In light of Mr. Dobbs's statutory rights to inspect the records of the businesses and his contractual obligation to share in the cost of determining the value

of his interests, we find that his request for an accounting fails to state a claim upon which relief can be granted.

### IV.

For the reasons stated herein, we vacate portions of the order dismissing the complaint and remand the case to the trial court for further proceedings consistent with this opinion. We tax the costs of the appeal in equal proportions to H. Kent Dobbs, Jr., Constance B. Dobbs and their surety and to Jack Guenther, Valarie Guenther, J.M. Carnes, and John K. Matt, jointly and severally, for which execution, if necessary, may issue.

TODD, P.J., and LEWIS, J., concur.