# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
### November 8, 2000 Session

## SOUTH HARPETH FARMS, L.L.C., ET AL. v. METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, ET AL.

### Appeal from the Chancery Court for Davidson County
### No. 98-3413-1     Irvin Kilcrease, Chancellor

---

### No. M2000-00635-COA-R3-CV - Filed April 5, 2001

---

The Metropolitan Board of Zoning Appeals granted a special use exception to the Metropolitan Government of Nashville and Davidson County for the construction of a tower for a new emergency response system. The appellants, South Harpeth Farms, LLC, James A. Webb, III and William H. Freeman appeal the trial court's order. The trial court held that the granting of the special use exception was supported by material evidence and that the Board of Zoning Appeals did not act illegally, arbitrarily or fraudulently. The appellants appeal on the grounds that: (1) The Metropolitan Government of Nashville and Davidson County was not a proper applicant for a special use exception under the Metropolitan Zoning Regulations; (2) the Metropolitan Government of Nashville and Davidson County misrepresented to the Board of Zoning Appeals that the proposed site for the project was the only possible location for the radio tower; and (3) the Board of Zoning Appeals arbitrarily and capriciously granted the special use exception in the absence of any material evidence to support its decision. We affirm the decision of the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and PATRICIA J. COTTRELL, JJ., joined.

Hugh C. Howser, Nashville, Tennessee, for the appellants, South Harpeth Farms, L.L.C., James A. Webb, III and William H. Freeman.

Karl F. Dean, Shayna Abrams and John L. Kennedy, Nashville, Tennessee, for the appellees, Metropolitan Government of Nashville and Davidson County and Metropolitan Board of Zoning Appeals.

**OPINION**

**I.**

In 1998, the Metropolitan Government of Nashville and Davidson County ("Metro") began a county-wide program to upgrade Metro's emergency dispatch response system. As part of this program, Metro planned to add a new radio tower at 8871 Griffith Road in Nashville. The State of Tennessee owned the land on Griffith Road and gave Metro a right-of-entry to begin construction-related tasks. A 400 foot tower owned and operated by the Tennessee Emergency Management Agency ("TEMA") was already present on this land.

South Harpeth Farms, LLC ("South Harpeth") owns some adjacent land which it maintains as a natural conservation area to protect and enhance migratory birds. South Harpeth, working with the Tennessee Wildlife Resources Agency, has spent $400,000 to $500,000 to place the property back in its natural state.

On June 6, 1998, Metro requested a special use exception to the tower height requirements from the Board of Zoning Appeals ("BZA"). The BZA granted the special use permit despite the appellants' contention that Metro was not a proper applicant because it did not own the land.

The BZA found that the health, safety and welfare of the general public would be protected by the installation of the tower, and that the proposal would not adversely affect property values. Therefore, Metro satisfied the general conditions for a special use exception. In addition, the BZA found that Metro had satisfied the specific conditions for a special use exception because existing towers were not available in the immediate area to accommodate the equipment required for the communication system.

The BZA conditioned its order on the following requirements: (1) that Metro remove the existing tower and deteriorating facilities; (2) that Metro maintain the property and perform the necessary environmental clean-up; (3) that Metro secure the existing fallout shelter; and (4) that Metro install the tower lighting according to the plan presented to the BZA during the hearing. Metro and the State subsequently entered into a lease agreement with respect to the property.

On November 17, 1998, the appellants filed a petition for writ of certiorari and supersedeas pursuant to Tennessee Code Annotated §§ 27-8-101, et. seq. and 27-9-101, et. seq. asking the trial court to review the actions of the BZA and to enjoin Metro from further work on the proposed tower. The trial court issued the writ of certiorari, but did not grant the writ of supersedeas. After conducting a hearing on November 12, 1999, the trial court dismissed the appellants' petition for writ of certiorari finding that the decision of the BZA was supported by material evidence and that the BZA did not exceed its jurisdiction or act illegally, arbitrarily, or fraudulently.

**II.**

There are three issues in this appeal: (1) Whether Metro was a proper applicant for a special use exception under the Metropolitan Zoning Regulations; (2) whether Metro misrepresented to the BZA that the proposed site for the project was the only possible location for the radio tower; and (3) whether the BZA arbitrarily and capriciously granted the special use exception in the absence of any material evidence to support its decision.

The standard of review for a petition for writ of certiorari is whether the BZA's actions violated constitutional and statutory provisions, whether the BZA exceeded its own statutory authority, followed an unlawful procedure, or acted arbitrarily, capriciously or illegally by reaching a decision without any material evidence. *See Hoover, Inc. v. Metro. Bd. of Zoning Appeals*, 924 S.W.2d 900, 904 (Tenn. Ct. App. 1996); *Hoover Motor Express Co. v. R.R. & Pub. Utils. Comm'n*, 261 S.W.2d 233, 238 (1953).

**A.**

Appellants make several arguments as to why Metro is not a proper applicant for the special use exception. Appellants first argue that Metro fraudulently misrepresented to the BZA that it was a lessee of the property. Appellants contend that Metro's completed application stated that Metro was a lessee of the property when in fact, Metro only had a right of entry onto the property from the State. At the time of the hearing, Metro and the State were in the process of negotiating a lease. Metro did enter into a lease with the State after the BZA granted the special use exception.

We are at a loss to understand just how this issue affects the merits of this controversy. The appellants do not allege that they relied to their detriment on Metro's representation that they had leased the property, *see Dobbs v. Guenther*, 846 S.W.2d 270 (Tenn. Ct. App. 1992), and the record is clear that the true state of affairs was fully revealed to the BZA. The appellants' position amounts to an assertion that Metro is guilty of having unclean hands and should be denied the special use exception on that basis. Assuming, however, that the doctrine could be invoked by an interested party in an administrative proceeding, we think the application of the doctrine would be entirely within the discretion of the agency.

In addition, the assertion that Metro misrepresented its interest in the property by claiming to have it under lease is based on a hypertechnical definition of the term "lease." The term covers a broad array of interests in property. One simple definition is: "any grant of permissive use." *People v. City of Chicago*, 182 N.E. 419 (Ill. 1932). We think that Metro's "right of entry" was in fact a lease of the property. As a lessee, Metro was also an owner of a special interest in the property. *See Helton v. Reynolds*, 640 S.W.2d 5 (Tenn. Ct. App. 1982).

Appellants also argue that amendments to the ordinances dealing with special use exceptions were not properly adopted and, therefore, should be struck down. These amendments occurred between the time of Metro's special use exception application and the BZA hearing. The Metro

Code § 17.40.290 formerly read, "Special exception applications shall be filed by the **landowner (or agent)** in form and content established by the board of zoning appeals. . . ." (emphasis added). The amendment replaced the term "landowner (or agent)" with the term "applicant." In addition, a new ordinance, Metro Code § 17.40.275, was added defining the term "applicant" as "an owner, optionee, agent, trustee, lessee, government official or department." Metro Code § 17.40.275. Appellants contend that the adoption of these amendments to the Metro Code were adopted in violation of Tennessee Code Annotated § 13-7-105.

Since we have decided that the BZA could grant the special use exception based on the ordinances before they were amended we think the question is moot. We decline the invitation to address the validity of the ordinances in question.

We have found no merit in the appellants' arguments that Metro is not a proper applicant for a special use exception.

**B.**

Appellants' next issue is that Metro misrepresented to the BZA that the proposed site was the only possible location for the radio tower. The trial court found this argument to be without merit based on testimony at the hearing that six (6) other sites were considered for the tower. The appellants argue on appeal to this court that they are not arguing that the appellees did not consider other sites, but rather that Metro misrepresented to the BZA that this was the only satisfactory site. The record shows the following proof was submitted to the BZA:

> [I]t's an obligation . . . when we embark on projects like this, to find the highest and best use of land at the lowest cost. And we looked at this area and found out that we had a piece of government property, which we could obtain a lease for and not spend money monthly, or a large amount to purchase it, and it fit all the criteria for the tower needs, that's why we selected the TEMA site.
>
> . . .
>
> The proposed facility is merely one of a total of seven sites selected to create a network of radio antennas operating at 800 MHz, in order to provide coverage for emergency services in the Metro area. The system is designed by the creation of a grid consisting of "honeycomb" cells. Each cell covers a limited geographic area, depending upon topography, vegetative cover and other objects that might block radio waves. In order to provide seamless coverage of the Metro area, there must be a series of continuous, overlapping cells. The proposed facility must be located close to the center of a cell in [sic] ensure adequate coverage; in addition, the antennas must be of sufficient height to clear obstructions such as trees, mountains and other structures. There is therefore limited flexibility in siting an antenna facility. The area of the subject property was chosen in order to provide a single "link" in the network.

Whenever possible, an existing structure is selected for antenna placement. However, where no such structures exist or where the structure is otherwise unavailable, because of difficult leasing terms or because it is already at its structural capacity, a new structure must be constructed. Although there is a nearby TEMA tower, this structure cannot support the proposed facility; indeed, the TEMA tower will be removed and TEMA equipment installed on the proposed tower in the event that the instant special exception is approved.

Metro considered several sites for the tower, but found this site to be the best choice for many reasons. We do not believe that Metro misrepresented that this was the only satisfactory site. We find that this issue is without merit.

## C.

Appellants' final issue is that the BZA arbitrarily and capriciously granted the special use exception in the absence of any material evidence to support its decision. Appellants concentrate on two areas to prove that the BZA acted without material evidence.

First, the appellants argue that an old bomb shelter located on the property which was constructed to house the Governor and Legislature of the State of Tennessee should be considered a building or site of historic significance. Appellants quote Metro Code § 17.16.150(F) which states, "Features of historical significance shall not be adversely affected by the granting of any special exception. The metropolitan historic zoning commission shall be consulted regarding those features essential to preserve the historical integrity of a building or site of historical significance." Metro Code § 17.04.060, defines "historically significant structure" as:

1. The structure is individually listed or is eligible for listing in the National Register of Historic Places as determined by the metropolitan historic zoning commission of Nashville and Davidson County, or by the Tennessee Historical Commission; or,

2. The structure is within a district listed or eligible for listing in the National Register of Historic Places or is within an historic overlay district, such structure having been determined to contribute to the architectural character of the district by the metropolitan historic zoning commission of Nashville and Davidson County or by the Tennessee Historical Commission; or,

3. The structure is within a historic overlay district, or within a district that meets the criteria for designation as a historic overlay district, such structure having been determined to contribute to the architectural character of the district by the metropolitan zoning commission of Nashville and Davidson County.

At the hearing, the appellants raised the issue of the historic significance of the bomb shelter. The Board stated that it did not believe that the bomb shelter was historic. In his motion to grant the special exception, a BZA member stated, "This is not a historic site . . . it's not on anybody's list. If it's on our list, Mr. Howser with all of his thoroughness surely would have found that and presented it to us." The property clearly does not meet either definition two (2) or three (3) for "historically significant structure." There was no evidence at the hearing that the bomb shelter fell within definition one (1). Therefore, under the ordinances it does not meet the definition of an historically significant structure.

The appellants also argue that the granting of the special use exception will adversely affect the adjacent property in violation of § 17.16.150(C) of the Metro Code. The appellants first attack the credentials of one of Metro's witnesses who testified that the new tower would not affect the value of the surrounding property. His testimony, however, went into the record without objection, and it is certainly material evidence on which the BZA could base a conclusion that the adjacent property would not be adversely affected from an economic standpoint. Our job is not to re-weigh the evidence. *See Hoover v. Metro Bd. of Zoning Appeals*, 924 S.W.2d 900 (Tenn. Ct. App. 1996).

The appellants and the appellees also presented a great deal of evidence to the BZA concerning the possible effects of the tower on migratory birds. Suffice it to say that there is evidence in the record that the new tower will be less of a hazard than the old one, because of a new lighting system and the removal of the guy wires supporting the old tower. In the end the BZA concluded that the public good served by the new tower outweighed the threat to migratory birds. We find that this decision was duly supported by material evidence and was clearly not an arbitrary decision on the part of the BZA.

When reviewing a local agency's actions under a writ of certiorari, we are limited to deciding whether the agency has acted illegally, arbitrarily or fraudulently. *See Hoover*, 924 S.W.2d at 904; *Hoover Motor Express,* 261 S.W.2d at 238. Therefore, we cannot decide whether the decision was correct or not, but rather whether the BZA exceeded its authority. *Id.*

For the reasons stated above, we affirm the trial court's decision that the special use exception was supported by material evidence and that the Board of Zoning Appeals did not act illegally, arbitrarily or fraudulently. Remand this cause to the Chancery Court of Davidson County for any further proceedings that may become necessary. Tax the costs on appeal to the appellants, South Harpeth Farms, LLC, James A. Webb, III and William H. Freeman.

 

 

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.