FILED
07/18/2025
Clerk of the
Appellate Courts

# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs April 2, 2025

## CHARLES J. BEARD ET AL. V. WILLIAM ODOM ET AL.

### Appeal from the Circuit Court for Bradley County
#### No. V-23-348        J. Michael Sharp, Judge
_____

### No. E2024-00737-COA-R3-CV
_____

This appeal arises from the purchase of a residential home. The plaintiff homebuyers asserted claims against the defendant sellers for intentional or negligent misrepresentation and violation of the Tennessee Residential Property Disclosure Act ("TRPDA"). The plaintiffs' claims were based solely on the defendants' TRPDA disclosure statement, which said there were no known defects in the home's floor structure. The trial court summarily dismissed all claims on the basis that the plaintiffs knew or should have known about the alleged defects because the plaintiffs had every opportunity to discover the defects and were made aware of the defects by their own observations and inspection reports. On appeal, the plaintiffs contend that there is a genuine issue of material fact as to whether they reasonably relied on the defendants' misrepresentation. But the plaintiffs failed to meet their burden of proof on summary judgment to establish that they actually or reasonably relied on the disclosure statement. For this reason, we affirm the trial court's judgment.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

FRANK G. CLEMENT JR., P.J., M.S., delivered the opinion of the Court, in which KENNY W. ARMSTRONG and KRISTI M. DAVIS, JJ., joined.

Warren J. Yemm, Chattanooga, Tennessee, for the appellants, Charles J. Beard and Shirley D. Beard.

Joshua H. Jenne, Cleveland, Tennessee, for the appellees, William Odom and Tammy Odom.

# OPINION

## FACTS AND PROCEDURAL HISTORY

In 2017, William and Tammy Odom ("Defendants") purchased a home on Young Road in Cleveland, Tennessee. Two years later, Defendants listed the property for sale and executed a TRPDA disclosure statement ("the Disclosure Statement"). Defendants also had the home "staged" with furniture and furnishings.

In early September 2019, prospective purchasers Charles and Shirley Beard (collectively, "Plaintiffs") visited the property. During their walkthrough, Plaintiffs noticed several defects, including slanted paneling next to the fireplace, old tile and loose caulk in the master bathroom, a squeak in the hallway floor, and a crack in the kitchen ceiling. Plaintiffs asked Defendants' realtor, William Casper, about the paneling, and Mr. Casper allegedly said that it was probably cut incorrectly before installation.

On September 13, 2019, Defendants provided Plaintiffs with the Disclosure Statement. The Disclosure Statement said that Defendants were aware of defects in the home's plumbing system, electrical system, driveway, and sidewalks. Defendants explained that the washer had a slow drain, that the bathroom exhaust fans were non-operational, and that the driveway and sidewalks had minor cosmetic cracks. Conversely, the Disclosure Statement said that Defendants were not aware of defects in, among other things, the walls, ceilings, floors, and foundation.

After receiving the Disclosure Statement, Plaintiffs offered to buy the house for $170,000 with the stipulation that they wanted a home inspection to satisfy "concerns they ha[d] about the dwelling." Defendants then submitted a counteroffer to sell the property for $188,900, and Plaintiffs accepted the counteroffer.

As amended by the counteroffer, the Purchase and Sale Agreement ("the PSA") required Plaintiffs to conduct their inspection within seven days of the binding agreement date. Thereafter, Plaintiffs were required to provide a written notification in which they could (1) furnish a list of objections and terminate the PSA; (2) accept the property "as-is"; or (3) furnish a list of items to be repaired by Defendants. Plaintiffs also reserved the right to conduct a final inspection before closing.

Plaintiffs then hired home inspector Christopher John German to inspect the house. On the day of the inspection, Plaintiffs met Mr. German at the property and asked him about the crack in the ceiling, the squeaky floor, and a gap at the bottom of the front door. Mr. German allegedly said that the floor was "sturdy" and explained that it was "just an older house." And in his inspection report, Mr. German said that he observed no problems

- 2 -

with, *inter alia*, the floor construction, doors, interior walls, and ceilings.[1] But Mr. German noted that the home's wooden floor supports had "[e]vidence of past repairs." He also noted a leak in the shower waste line, damage to the shower walls, defects in the shower floor, and improper flashing around vent pipes on the roof.

The inspection report included two photographs taken under the house and one taken on the roof. The first photograph showed the shower waste line with the caption, "Repair the leak at the master shower drain and pan." The second showed a "pipe joint" under the bathroom with the caption, "Repair the drip at the pipe joint under the master bath area." And the third showed a vent pipe on the roof with the caption, "Recommend adding vent boots at the three vent pipes on the metal roof." The parties later executed an amendment to the PSA in which Defendants agreed to replace the vent pipe boots and repair the master bathroom leaks prior to closing.

Plaintiffs then had a pest control company perform a termite inspection, but they did not receive the report until after closing.

On October 5, 2019, Plaintiffs sent Defendants a notification stating, *inter alia*, "Buyer has made any and all inspections" and "**ACCEPTS the Property in its present AS IS condition** with any and all faults and no warranties expressed or implied." (Emphasis in original). Plaintiffs reserved their right to conduct a final inspection, but they proceeded to closing without doing so.

The closing was held on October 10, 2019. At that time, Defendants gave Plaintiffs an update to the Disclosure Statement, saying that there were "**NO CHANGES**" to the property's condition and that the property was "substantially the same as it was when the Residential Property Condition Disclosure form was provided."

When Plaintiffs took possession of the property, all furnishings had been removed, and Plaintiffs noticed a slope in the living room floor. Thus, Plaintiffs hired another home inspector who found extensive fungus damage and dry rot in the home's girder beam, floor joists, and subflooring.

In January 2020, Plaintiffs filed a complaint against Defendants in the Bradley County Chancery Court. Plaintiffs voluntarily dismissed the chancery court action in December 2022, and commenced the present action in the circuit court in May 2023. The Complaint asserted claims against Defendants for intentional or negligent

---

[1] The inspection report said that these elements "APPEAR SERVICEABLE," which meant that Mr. German "did not observe conditions that would lead [him] to believe problems existed with this system or component."

misrepresentation and violation of the TRPDA. The Complaint alleged that Defendants misrepresented the condition of the home's floor system on the Disclosure Statement.[2]

After conducting discovery, Defendants moved for summary judgment with exhibits and a Rule 56.03 statement of undisputed facts. Defendant argued that summary judgment was warranted because Plaintiffs observed defects in the home during their visits and were placed on notice as to those defects by Mr. German's inspection report. Thus, Defendants argued that Plaintiffs "knew or should have known about any alleged defects or deficiencies associated with the property."

In their response, Plaintiffs admitted that they visited the home twice and observed defects in the walls, bathroom, floor, ceiling, and door. Plaintiffs also admitted that their home inspection report noted "evidence of past repairs" to the floor system and two leaks under the master bathroom.

After a hearing in May 2024, the trial court granted summary judgment to Defendants. The court held that Plaintiffs had actual or constructive notice of the home's defects because (1) "Mrs. Beard herself admitted in her deposition that she and her husband were aware of the existence of the squeaky floors" and "other items"; (2) the home inspection report "clearly detailed problems with the flooring and/or subflooring beneath the Master bedroom and/or Master bedroom/bathroom"; (3) Plaintiffs "inquired about, and were informed of the existence of various problems, including an alleged leak in the shower of the Master bedroom"; and (4) Plaintiffs had a termite inspection that revealed evidence of past treatment. The court also found it significant that Plaintiffs executed the "Notification" before closing and said they were buying the home "as-is."[3]

---

[2] On appeal, Plaintiffs assert that Defendants also failed to disclose that there were problems with the heating and air condition system. The Complaint, however, does not allege that Defendants misrepresented this component of the house. *See* Tenn. R. Civ. P. 9.02 (requiring circumstances constituting fraud to be averred with particularity).

[3] We observe that the trial court's order appears to apply the incorrect legal standard to Defendants' motion. The trial court found it was "**more likely true than not true** that the plaintiffs were made aware of the existing defect by means of their having obtained their own personal home inspection." (Emphasis added). This is akin to a finding that the evidence preponderated in favor of Defendants. *See DeLany v. Kriger*, 671 S.W.3d 548, 552 (Tenn. Ct. App. 2019) (stating that "preponderance of the evidence" means a fact is "more likely than not" true). But "[i]t is not the purpose of a motion for summary judgment to determine the preponderance of the evidence." *Bellamy v. Fed. Exp. Corp.*, 749 S.W.2d 31, 33 (Tenn. 1988); *see also Toothman v. Burns Stone Co.*, No. 01-A-01-9001-CV00012, 1990 WL 96273, at *3 (Tenn. Ct. App. July 13, 1990) (when reviewing a motion for summary judgment, courts "cannot weigh the evidence" or "determine where the preponderance of the evidence lies"). Regardless, we review a trial court's decision on a motion for summary judgment de novo with no presumption of correctness. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 250 (Tenn. 2015).

- 4 -

For these reasons, the trial court granted summary judgment to Defendants and dismissed the claims against them. This appeal followed.

<h2 style="text-align:center">ISSUES</h2>

Plaintiffs raise two issues on appeal:

(1) Whether the trial court erred in granting Defendants' Motion for Summary Judgment on Plaintiffs' claim for intentional or negligent misrepresentation; and

(2) Whether the trial court erred in granting Defendants' Motion for Summary Judgment on Plaintiffs' claim for violation of the TRPDA.

<h2 style="text-align:center">STANDARD OF REVIEW</h2>

This court "review[s] a trial court's decision on a motion for summary judgment de novo, with no presumption of correctness." *Rye*, 477 S.W.3d at 250. In other words, we must "make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied." *See id.*

Under Rule 56, "A party against whom a claim, counterclaim, or cross-claim is asserted or a declaratory judgment is sought may, at any time, move with or without supporting affidavits for a summary judgment in the party's favor as to all or any part thereof." Tenn. R. Civ. P. 56.02. "[W]hen the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense." *Rye*, 477 S.W.3d at 264. "[T]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04.

When evaluating a motion for summary judgment, courts "must accept the nonmoving party's evidence as true[ ] and view both the evidence and all reasonable inferences that can be drawn therefrom in the light most favorable to the nonmoving party." *Tatham v. Bridgestone Americas Holding, Inc.*, 473 S.W.3d 734, 751–52 (Tenn. 2015). Summary judgment "is appropriate only when the facts and the reasonable inferences from those facts would permit a reasonable person to reach only one conclusion." *Giggers v. Memphis Hous. Auth.*, 277 S.W.3d 359, 364 (Tenn. 2009).

## ANALYSIS

### I. NEGLIGENT MISREPRESENTATION CLAIM

As an initial matter, we find it appropriate to address the viability of Plaintiffs' claim for negligent misrepresentation based on the Disclosure Statement.

The TRPDA places a duty on owners of residential property to furnish purchasers with a statement "including any material defects **known** to the owner," Tenn. Code Ann. § 66-5-202(1) (emphasis added), and it provides purchasers with a cause of action for any misrepresentation "of defects existing on the property as of the date of execution of the real estate purchase contract," *id*. § 66-5-208(a)(1). But the Act limits such actions to errors, inaccuracies, or omissions "within the **actual knowledge** of the owner." *Id*. § 66-5-204(a), (a)(1) (emphasis added). **The TRPDA also** authorizes common-law misrepresentation claims based on inaccurate disclosure statements, but it **limits such claims to those based on "an owner's intentional or willful misrepresentation**." *Id*. § 66-5-208(a)(2) (emphasis added).

Thus, actions based on TRPDA forms—whether asserted under the statute or common law—must be predicated on a **knowing** misrepresentation. *See also* Tenn. Code Ann. § 66-5-201 (requiring disclosure to "be given in good faith"). For this reason, we conclude that Plaintiffs cannot maintain an action for **negligent** misrepresentation based on the TRPDA disclosure form.

### II. INTENTIONAL MISREPRESENTATION CLAIM

Plaintiffs contend that the trial court erred in granting summary judgment on their intentional misrepresentation claim because there was a genuine issue of material fact as to whether Plaintiffs reasonably relied on Defendants' misrepresentation.

Claims for intentional misrepresentation have six elements:

(1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and (6) plaintiff suffered damage as a result of the misrepresentation.

*Stanfill v. Mountain*, 301 S.W.3d 179, 188 (Tenn. 2009) (quoting *Walker v. Sunrise Pontiac-GMC Truck, Inc.*, 249 S.W.3d 301, 311 (Tenn. 2008)).

We note that there are no affidavits or other evidence in the record on which one could conclude that Defendants knew about the damaged floor structure. During her deposition, Ms. Beard testified that the only evidence of the Defendants' knowledge was

- 6 -

the fact that "they lived in it for two years" and the damage was "obvious." That said, Defendants moved for summary judgment solely on the issue of reasonable reliance; thus, the only issue before us is whether Plaintiffs have evidence from which a reasonable jury could conclude that Plaintiffs reasonably relied on the Disclosure Statement.[4]

"Justifiable or reasonable reliance involves two different issues: whether the plaintiff actually relied on the misrepresentation and whether that reliance was reasonable." *Pritchett v. Comas Montgomery Realty & Auction Co., Inc.*, No. M2014-00583-COA-R3-CV, 2015 WL 1777445, at *3 (Tenn. Ct. App. Apr. 15, 2015) (citation omitted). Actual reliance is necessary to establish causation; without actual reliance, it cannot be said that the misrepresentation caused the plaintiff's damages. Dan B. Dobbs et al., The Law of Torts § 671 (2d ed.); *see Dobbs v. Guenther*, 846 S.W.2d 270, 274 (Tenn. Ct. App. 1992) (stating that action for fraud requires proof of "an injury caused by reasonable reliance on the representation"). Thus, "the maker of a fraudulent misrepresentation is not liable to another whose decision to engage in the transaction that the representation was intended to induce is not caused by his belief in the truth of the representation but is the result of an independent investigation made by him." Restatement (Second) of Torts § 547 (1977).

We conclude that summary judgment was appropriate because Plaintiffs' evidence established that they did not actually rely on the Disclosure Statement. To the contrary, the evidence established that Plaintiffs relied on their own independent investigation.

The only evidence of Plaintiffs' reliance is Ms. Beard's deposition testimony.[5] Ms. Beard testified that she and Mr. Beard relied on statements by the inspector, Mr. German, and Defendants' realtor, Mr. Odom:

Q With respect to the crawlspace, are you aware that somebody, prior to your purchasing this house, had done some repairs to some of the floor girders?

A We didn't know nothing about it until we bought the house. My husband and I are not able to crawl up and underneath no house to inspect it. **That's the reason we depended on Chris German**.

---

[4] In their appellate brief, Defendants make a cursory argument that Plaintiffs cannot establish Defendants' knowledge, but Defendants did not make this argument in the trial court. *See Stephens v. Home Depot U.S.A., Inc.*, 529 S.W.3d 63, 76 (Tenn. Ct. App. 2016) ("Issues raised for the first time on appeal are waived." (quoting *Dick Broad. Co. of Tennessee v. Oak Ridge FM, Inc.*, 395 S.W.3d 653, 670 (Tenn. 2013)).

[5] Mr. Beard was not deposed, and there is no affidavit from Mr. Beard in the record.

. . . .

Q  Okay. But you noticed at the very first visit that the walls on both sides of the fireplace seemed to be out of plumb or slanted?

A  Yes.

Q  Did you ask anybody about that?

A  I asked Mr. Casper[, Defendant's realtor], and he said he thought it was whoever put the paneling just miscalculated and cut the paneling wrong.

Q  In other words, **you accepted his answer** as being one that indicated it was not a structural problem?

A  Right.

. . . .

A  I asked, personally, why is the crack in the ceiling in the kitchen.

Q  You asked this of Mr.—the realtor?

A  The realtor, as well as Mr. German.

. . . .

A  . . . [W]henever we went through, we thought, you know, well, it looks pretty decent. We were concerned about a few things, but **we were depending, totally depending on Mr. German to tell us, you know, just how bad the house was**.

(Emphasis added). Notably, Ms. Beard never mentioned the Disclosure Statement in her testimony.

Accordingly, in their appellate brief, Plaintiffs contend that they were not on notice as to the home's defects because Mr. Odom "assured the Beards that the paneling had just been cut and installed improperly" and Mr. German "assured them that there was no gap in the door" and "that the squeaking [floor] and the crack [in the ceiling] were fine, the floor was sturdy and that 'it's just an older house.'" Plaintiffs say that Mr. German also "assured them that the leak in the shower was an easy fix."

Moreover, the reasonableness of Plaintiffs' purported reliance on the Disclosure Statement is completely undermined by the undisputed fact that Plaintiffs noticed "obvious" defects during their visits that directly contradicted the Disclosure Statement. "The requirement of justifiable reliance serves in part to bolster the element of actual

reliance." Restatement (Third) of Torts: Liab. for Econ. Harm § 11, cmt. *d* (2020). "If a plaintiff claims to have relied on the defendant's statements in the face of obvious indications that the statements were false, one may doubt that the plaintiff meaningfully relied at all." *Id.*

Ms. Beard testified that she and Mr. Beard observed "obvious" issues with the floors, walls, and ceilings during their first walkthrough, and they found the observed defects serious enough that they specifically negotiated for the right to conduct an inspection "to satisf[y] concerns they ha[d] about the dwelling."

Generally, reasonable reliance is "a question of fact" and "inappropriate for summary judgment." *City State Bank v. Dean Witter Reynolds, Inc.*, 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996) (citations omitted). However, our courts have granted summary judgment on the reasonable reliance element when the evidence in the record could lead a reasonable jury to only one conclusion, that the plaintiff had information that contradicted the alleged misrepresentation. *See*, *e.g.*, *Annaco, Inc. v. Corbin*, No. 02A01-9804-CH-00111, 1998 WL 929637, at *4 (Tenn. Ct. App. Dec. 31, 1998) (finding no genuine issue as to reasonable reliance when plaintiff had information that contradicted alleged misrepresentation). Here, there is no material evidence upon which a reasonable jury could conclude that Plaintiffs actually or reasonably relied on the TRPDA form.

## III. TRPDA CLAIM

For the same reasons stated above, we conclude that summary judgment was appropriate on Plaintiffs' claim for violation of the TRPDA.

The TRPDA gives purchasers a cause of action "for an owner's misrepresentation on a residential property disclosure statement" when the purchaser has suffered "actual damages . . . as a result of defects existing in the property as of the date of execution of the real estate purchase contract." Tenn. Code Ann. § 66-5-208(a)(1). The implication is that the misrepresentation must be the cause of the purchaser's damages, i.e., the plaintiff must show that he or she actually relied on the misrepresentation. *See* Dobbs, *supra*, § 671 (explaining that evidence of reliance is necessary to establish causation).

Because the evidence in this record established that Plaintiffs did not reasonably rely on the Disclosure Statement, Plaintiffs cannot prove that their damages were caused by any misrepresentation therein. Thus, we affirm the summary dismissal of this claim.

## IN CONCLUSION

For these reasons, the judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellees, Charles and Shirley Beard.

_____
FRANK G. CLEMENT JR., P.J., M.S.