IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
March 31, 2022 Session

## ASHLEY SHEARIN MEADE v. PADUCAH NISSAN, LLC ET AL.

**Appeal from the Circuit Court for Williamson County**
**No. 2020-462       Joseph A. Woodruff, Judge**
_____

**No. M2021-00563-COA-R3-CV**
_____

Wife appeals from the trial court's decision to dismiss a complaint against the car dealership managed by her estranged husband for claims associated with the use of a demonstrator vehicle. We affirm the decision of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY ARMSTRONG, JJ., joined.

William Kennerly Burger, Murfreesboro, Tennessee, for the appellant, Ashley Shearin Meade.

Sye T. Hickey and Austin K. Purvis, Nashville, Tennessee, for the appellee, Paducah Nissan, LLC.

## OPINION

### I.       FACTUAL AND PROCEDURAL HISTORY

Plaintiff/Appellant Ashley Shearin Meade ("Appellant") filed for divorce against her husband James Robert Meade, Jr. ("Mr. Meade") sometime in 2019. While the divorce was still pending, Appellant filed a complaint on October 7, 2020, in the Circuit Court for Williamson County (the "trial court") against Defendant/Appellee Paducah Nissan, LLC[1] ("Appellee") and Mr. Meade, in his individual capacity and his capacity as a managing agent for Appellee. Because this case was decided on a motion to dismiss, we take the facts as alleged in the complaint as true for purposes of this appeal.

---

[1] Appellee is an automobile dealership in Kentucky.

The genesis of Appellant's complaint was that Appellant had entered into an oral agreement with Mr. Meade and Appellee that resulted in an "effective year-to-year leasing of [a] 'demonstrator' vehicle, as negotiated with [Mr.] Meade [] at the commencement of their parties' relationship, and effectively renewed each year (following the surrender of her personal vehicle at Mr. Meade's request)." The complaint alleged that such a lease or bailment was created under the following circumstances:

1. [Appellant], for good and valuable legal consideration, and as a result of an unwritten, routine practice of the couple, possessed, as an intangible marital interest, exclusive dominion and control over a certain 2020 Nissan Armada SUV. [Appellant] asserts that throughout the couples' seven-year relationship, she operated a "demonstrator" vehicle through an oral lease, or bailment.

2. [Appellant] allowed Mr. Meade to dispose of her unencumbered vehicle. A "quid pro quo" (as consideration or detrimental reliance) supported the agreement by Mr. Meade and [Appellant]: as a benefit to [Appellee], both Mr. Meade and [Appellant] would be provided each year with a new "demonstrator," with a specifically identified vehicle being driven by [Appellant], and another (specifically identified) vehicle being driven each year by Mr. Meade. That practice never wavered. There was no written agreement. There were no conditions for usage; restrictions; compliance duties for insurance; and, no forms to sign. Accordingly, [Appellant's] basis for her assertion of lawful "legal and equitable" dominion and control over the above-referenced 2020 Nissan Armada was firmly established by conduct[.]

Appellant therefore alleged that she had an enforceable agreement as a lessee or bailee.

According to the complaint, however, in 2020, Mr. Meade suffered a series of legal setbacks in the divorce proceeding. In addition, in June 2020, Mr. Meade admitted in his divorce deposition that he had placed a tracking device on Appellant's vehicle in late 2019; according to the complaint the tracking "occurred on numerous, successive dates over a period of months" and was done by Mr. Meade "in furtherance of his management position" with Appellee. In July 2020, Mr. Meade requested that Appellant sign a written agreement as condition for her continued use of the demonstrator vehicle. According to Appellant, the terms were onerous, "high risk" to her, and legally ineffective. She refused.

The parties' disputes culminated on September 14, 2020, when Mr. Meade caused the 2020 Nissan Armada to be "repossessed." Appellant was instead left with the keys to drive a "much smaller vehicle" that had typically been used by Mr. Meade.[2] According to

---

[2] Appellant alleged that Mr. Meade still insisted that she sign the "high risk" agreement to use the smaller vehicle.

Appellant, this action violated both the oral lease or bailment that the parties had agreed to abide by and the mandatory injunction put in place in the divorce action.[3]

Based on these facts, the complaint raised claims of conversion, unlawful vehicle tracking, and violations of the Tennessee Consumer Protection Act ("TCPA"). Moreover, Appellant asserted that Mr. Meade had utilized his role as a principal and manager of Appellee in furtherance of his personal attack upon Appellant, and that Appellee should be vicariously liable for the actions of Mr. Meade. Appellant sought compensatory damages in the amount of $100,000.00, as well as treble or punitive damages.

On December 18, 2020, Appellee filed a motion to dismiss, arguing that Appellant failed to state a claim upon which relief could be granted against Appellee. Appellant responded in opposition. A hearing on the motion to dismiss was held via videoconference on April 22, 2021, at which time the trial court took the motion under advisement.

The trial court issued a written order granting Appellee's motion to dismiss on May 4, 2021. Therein, the trial court ruled that Appellant's conversion claim failed because Appellant had not alleged an ownership interest in the 2020 Nissan Armada. The trial court further ruled that Appellant's vehicle tracking claim did not meet the requirements under either the federal or state statutes cited by Appellant. Finally, the trial court ruled that the repossession of the vehicle did not give rise to any claim under the TCPA.

On June 24, 2021, Appellant filed a notice of voluntary dismissal of the claims against Mr. Meade individually. On July 1, 2021, the trial court entered an order dismissing the claims against Mr. Meade without prejudice. A final judgment having been entered, Appellant appealed to this Court.

## II. ISSUES PRESENTED

---

[3] The injunction that Appellant references in her complaint stems from the following statute:

Upon the filing of a petition for divorce or legal separation, and upon personal service of the complaint and summons on the respondent or upon waiver and acceptance of service by the respondent, the following temporary injunctions shall be in effect against both parties until the final decree of divorce or order of legal separation is entered, the petition is dismissed, the parties reach agreement, or until the court modifies or dissolves the injunction, written notice of which shall be served with the complaint:

(A)(i) An injunction restraining and enjoining both parties from transferring, assigning, borrowing against, concealing or in any way dissipating or disposing, without the consent of the other party or an order of the court, of any marital property. . . .

Tenn. Code Ann. § 36-4-106(d)(1).

On appeal, Appellant contends that the trial court erred in granting Appellee's motion to dismiss her claims for (1) conversion; (2) unlawful vehicle tracking under state and federal law; and (3) violations of the TCPA. In the posture of appellee, Appellee seeks an award of attorney's incurred in this appeal under three different theories.

### III. STANDARD OF REVIEW

An essential purpose of a pleading is to give notice of the issues to be tried so that the opposing party will be able to prepare for trial. ***Abshure v. Methodist Healthcare–Memphis Hosps.***, 325 S.W.3d 98, 103 (Tenn. 2010). A Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss a complaint for failure to state a claim upon which relief can be granted tests the legal sufficiency of the complaint. ***Lanier v. Rains***, 229 S.W.3d 656, 660 (Tenn. 2007). It admits the truth of all relevant and material allegations, but asserts that such allegations do not constitute a cause of action as a matter of law. *See* ***Riggs v. Burson***, 941 S.W.2d 44, 47 (Tenn. 1997). These motions are not favored and are rarely granted in light of the liberal pleading standards contained in the Tennessee Rules of Civil Procedure. ***Dobbs v. Guenther***, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). Moreover, pleas or counts contained in a complaint will be given the effect required by their content, without regard to the name given them by the pleader. ***State By and Through Canale ex rel. Hall v. Minimum Salary Dept. of African Methodist Episcopal Church, Inc.***, 477 S.W.2d 11 (Tenn.1972).

When considering a motion to dismiss for failure to state a claim upon which relief can be granted, we are limited to an examination of the complaint alone. *See* ***Wolcotts Fin. Serv., Inc. v. McReynolds***, 807 S.W.2d 708, 710 (Tenn.Ct.App.1990). The basis for the motion is that the allegations in the complaint, when considered alone and taken as true, are insufficient to state a claim as a matter of law. *See* ***Cook By & Through Uithoven v. Spinnaker's of Rivergate, Inc.***, 878 S.W.2d 934, 938 (Tenn. 1994). Although allegations of pure legal conclusion will not sustain a complaint, *see* ***Ruth v. Ruth***, 213 Tenn. 82, 372 S.W.2d 285, 287 (Tenn. 1963), a complaint "need not contain in minute detail the facts that give rise to the claim[.]" ***Donaldson v. Donaldson***, 557 S.W.2d 60, 61 (Tenn. 1977); ***White v. Revco Discount Drug Centers***, 33 S.W.3d 713, 718, 725 (Tenn. 2000). Instead, the complaint

> must contain direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested . . . by the pleader, or contain allegations from which an inference may fairly be drawn that evidence on these material points will be introduced at trial.

***Webb v. Nashville Area Habitat for Human., Inc.***, 346 S.W.3d 422, 427 (Tenn. 2011) (quoting ***Leach v. Taylor***, 124 S.W.3d 87, 92 (Tenn. 2004)).

In short, a Tennessee Rule of Civil Procedure 12.02(6) motion to dismiss seeks only

- 4 -

to determine whether the pleadings state a claim upon which relief can be granted, and such a motion challenges the legal sufficiency of the complaint, not the strength of the plaintiff's proof. **Bell ex rel. Snyder v. Icard**, 986 S.W.2d 550, 554 (Tenn. 1999). In considering such a motion, the court should construe the complaint liberally in favor of the plaintiff, taking all the allegations of fact therein as true. *See* **Cook ex. rel. Uithoven v. Spinnaker's of Rivergate, Inc.**, 878 S.W.2d 934, 938 (Tenn. 1994). An appellate court should uphold the grant of a motion to dismiss only when it appears that the plaintiff can prove no set of facts in support of a claim that will entitle him or her to relief. **Young v. Barrow**, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

Tennessee Rule of Civil Procedure 12.02(6) motions, however, are not designed to correct inartfully drafted pleadings. **Dobbs v. Guenther**, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992). However, a complaint should not be dismissed, no matter how inartfully drafted, if it states a cause of action. **Id.** (citing **Paschall's, Inc. v. Dozier**, 219 Tenn. 45, 407 S.W.2d 150, 152 (Tenn. 1966); **Collier v. Slayden Bros. Ltd. Partnership**, 712 S.W.2d 106, 108 (Tenn. Ct. App. 1985)). Nonetheless, there is no duty on the part of the court to create a claim that the pleader does not spell out in his complaint. **Utter v. Sherrod**, 132 S.W.3d 344 (Tenn. Ct. App. 2003). But while we should not endeavor to create claims where none exist, we must always look to the substance of the pleading rather than to its form. **Dobbs**, 846 S.W.2d at 273 (citing **Donaldson**, 557 S.W.2d at 62).

## IV.   ANALYSIS

### A.

Appellant first argues that the trial court erred in dismissing her claim for conversion. It is well-settled that in order to establish a conversion, the plaintiff must show the following elements: "(1) an appropriation of another's tangible property to one's use and benefit; (2) an intentional exercise of dominion over the chattel alleged to have been converted; and (3) defiance of the true owner's rights to the chattel." **White v. Empire Exp., Inc.**, 395 S.W.3d 696, 720 (Tenn. Ct. App. 2012) (citing **River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc.**, 173 S.W.3d 43, 60 (Tenn. Ct. App. 2002)). The trial court dismissed this claim on the basis that Appellant's complaint did not establish the required element that Appellee's retaking of the automobile was in "defiance of the true owner's rights to the chattel." **Id.**

We agree with the trial court. Here, Appellant's complaint makes clear that Appellee remained at all times the true owner of the automobiles that she was allowed to drive. Indeed, Appellant admits that the vehicle at issue was "lawfully titled" to Appellee. But Appellant asserts that this fact is immaterial where her complaint sufficiently alleged that she and Appellee entered into a bailment or lease that entitled her to full use and possession of a demonstrator vehicle of comparable quality to one she had given to Appellee as

consideration years earlier.[4] According to Appellant, Appellee's action in retaking possession of her current vehicle without her consent through self-help was therefore an unlawful conversion. Because Appellant alleged that she had genuine possessory rights in the vehicle and Appellee's action was in defiance of those rights, she contends that the trial court was wrong to dismiss her claim for conversion at this early stage of proceedings.

In support of this argument, Appellant cites various law concerning the requirements to establish a lease or bailment, as well as governing repossessions generally. The problem with Appellant's argument, however, is that she does not cite a single case in which a lease or bailment was sufficient to meet the final element of conversion set forth above. Nor has our research revealed a single Tennessee case that reaches that conclusion.[5] Instead, Tennessee law provides that lessees and bailees are not owners of the property, but merely temporary possessors. *See generally **Aegis Investigative Grp. v. Metro. Gov't of Nashville & Davidson Cnty.***, 98 S.W.3d 159, 162–63 (Tenn. Ct. App. 2002) ("A bailment is a delivery of personalty for a particular purpose or on mere deposit, on a contract expressed or implied, that after the purpose has been fulfilled it shall be re-delivered to the person who delivered it or otherwise dealt with according to his direction or kept until he reclaims it."); Bailment, *Black's Law Dictionary* 162 (9th ed. 2009) ("Unlike a sale or gift of personal property, a bailment involves a change in possession but not in title."); Lease, *Black's Law Dictionary* at 972 ("To grant possession and use to (land, buildings, rooms, movable property, etc.) to another in return for rent or other consideration . . . ."). Indeed, some Tennessee caselaw uses the same language used in the context of conversion, the term "true owner," to describe the bailor in a bailment situation, not the bailee. *See **Dispeker v. New S. Hotel Co.***, 213 Tenn. 378, 388, 373 S.W.2d 904, 909 (Tenn. 1963) (quotation marks and citation omitted) (emphasis added) ("It is uniformly held that a delivery of bailed property by the bailee to one not the *true owner* and not authorized by the bailor to receive it is, of itself, a conversion and breach of the contract of bailment for which the law imposes an absolute liability upon the bailee for loss or damage occasioned thereby[.]"). This caselaw confirms that, in the typical case, the *true owner* of a property subject to a bailment is the bailor, not the bailee.

Turning to Appellant's complaint, she alleged that she entered into a valid oral lease or bailment with Appellee despite the fact that such agreement was "vague," "indefinite," and "broad." Indeed, her complaint even goes so far as to allege that the purported

---

[4] At times, Appellant also uses the term "license" to describe her alleged rights in the vehicle at issue. There is no dispute that a license does not transfer ownership of property to the licensee. *See generally* License, *Black's Law Dictionary* 1002 (9th ed. 2009) ("A permission, us[ually] revocable, to commit some act that would otherwise be unlawful[.]").

[5] Tennessee law is rife with examples of conversion claims against the bailee *See, e.g., **Breeden v. Elliott Bros.***, 173 Tenn. 382, 118 S.W.2d 219, 220 (1938) ("Conversion of property by a bailee may be committed in two ways: By acts in derogation of the bailor's title, or by acts in derogation of the bailor's possessory rights."); ***Colyar v. Taylor***, 41 Tenn. 372, 376 (1860) (finding a bailee guilty of conversion).

agreement was riddled with "unlawful vagueness." Clearly, the question of whether a valid lease or bailment was created is a good one. *Cf. United Am. Bank of Memphis v. Walker*, No. 3, 1986 WL 11250, at *2 (Tenn. Ct. App. Oct. 10, 1986) ("It is a fundamental rule of law that an alleged contract which is so vague, indefinite and uncertain as to place the meaning and intent of the parties in the realm of speculation is void and unenforceable."). Still, Tennessee law has made clear that possession is not sufficient to establish a conversion, defiance of the *true owner's* rights must be alleged. *See White*, 395 S.W.3d at 720. But as the caselaw above shows, a bailee or lessee is simply not a true owner of property in his or her possession by virtue of a bailment or lease. Thus, even assuming arguendo that a valid contract for continued possession of the personalty existed, Appellant has not alleged an ownership interest of any kind sufficient to meet the *true owner* element of the tort of conversion. At best, her allegations implicate breach of contract establishing a bailment, lease, or license, which Appellant did not raise in her complaint or in this appeal. As such, the trial court did not err in dismissing Appellant's conversion claim.

**B.**

Appellant next asserts that the trial court erred in dismissing her claims for unlawful vehicle tracking under both a federal and a Tennessee statute. To the extent that Appellant's argument requires that we consider the proper construction of statutes, we keep the following principles in mind:

> Our role is to determine legislative intent and to effectuate legislative purpose. The text of the statute is of primary importance, and the words must be given their natural and ordinary meaning in the context in which they appear and in light of the statute's general purpose. When the language of the statute is clear and unambiguous, courts look no farther to ascertain its meaning. When necessary to resolve a statutory ambiguity or conflict, courts may consider matters beyond the statutory text, including public policy, historical facts relevant to the enactment of the statute, the background and purpose of the statute, and the entire statutory scheme. However, these non-codified external sources cannot provide a basis for departing from clear codified statutory provisions.

*Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012) (citations and quotation marks omitted).

We begin with the federal statutory scheme cited by Appellant, 18 U.S.C. § 2510, et. seq. As the basis for her claim for damages related to the alleged vehicle tracking, Appellant relies on 18 U.S.C. § 2520, which provides that "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter may in a civil action recover from the person or entity, other than the United States, which engaged in that violation such relief as may be appropriate." 18 U.S.C. §

- 7 -

2520(a) (noting some exceptions not relevant here). Thus, in order to recover under this statute, the wire, oral, or electronic communication of Appellant must have been intercepted, disclosed, or intentionally used by Appellee.

There appears to be generally no dispute that neither wire nor oral communications are at issue here. Certainly, Appellant does not discuss either wire communications or oral communication in her appellate brief. So the issue here is whether Appellee intercepted, disclosed, or intentionally used an electronic communication of Appellant's. The term "electronic communication" is defined by 18 U.S.C. § 2510(12) as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic or photooptical system that affects interstate or foreign commerce[.]" But the definition specifically exempts several arguable communications from within its definition, including "any communication from a tracking device (as defined in section 3117 of this title)[.]" In turn, a tracking device is defined as "an electronic or mechanical device which permits the tracking of the movement of a person or object." 18 U.S.C. § 3117(b).

Here, the factual basis for Appellant's vehicle tracking claim is as follows:

B. Over an approximate four-month period (estimated), Mr. Meade has acknowledged that he placed an electronic location tracking device on the vehicles (one or more) that had been assigned to [Appellant] (effectively by lease or license) as a "demonstrator vehicle," but lawfully titled to [Appellee].

C. Based upon a specific malicious motive specified in the events described above, Mr. Meade placed a tracking device on a previously leased car and the 2020 Nissan Armada being driven exclusively by [Appellant], without her knowledge or permission.

D. Mr. Meade asserts his equal ownership in the legal-title, holding [Appellee], as his authority to place the tracking device on the demonstrator vehicle orally leased to [Appellant].

E. The unlawful tracking produced no incriminating evidence against [Appellant], with the device being removed, by Mr. Meade's admission, shortly before his deposition.

F. Upon the factual premises outlined above, [Appellant] reasonably enjoyed an expectation of privacy, based upon the protections of common law (invasion of privacy) and the above federal and state criminal codes applicable to Mr. Meade's conduct.

So the basis of Appellant's complaint is that Mr. Meade placed a vehicle tracking device on the automobile that she was granted possession of without her consent. But the very thing that Appellant alleges occurred here—the placement of an "electronic location tracking device"—does not constitute an electronic communication under the federal

statute at issue. As such, 18 U.S.C. § 2520 simply does not serve as a basis for liability related to nonconsensual vehicle tracking. And Appellant has alleged no other interception, use, or disclosure by Appellee for which liability could attach under 18 U.S.C. § 2520. Moreover, the two federal cases Appellant relies on in this appeal, neither of which involve location tracking devices, are inapposite to this case and in no way mandate a contrary result. *See **United States v. Jones***, 542 F.2d 661, 663 (6th Cir. 1976) (involving a claim that a husband intercepted the telephone communications of his estranged wife); ***Klumb v. Goan***, 884 F. Supp. 2d 644, 645 (E.D. Tenn. 2012) (involving a claim that a wife installed spyware on the computer of her ex-husband). The trial court therefore did not err in dismissing Appellant's claim under federal law.

Appellant also alleges that placement of the vehicle tracking device violates Tennessee law, which entitles her to damages. We agree with Appellant that non-consensual placement of a vehicle tracking device on a leased vehicle violates Tennessee law. Particularly, Tennessee Code Annotated section 39-13-606 provides as follows:

> (A) Except as provided in subsection (b),[6] it is an offense for a person to knowingly install, conceal or otherwise place an electronic tracking device in or on a motor vehicle without the consent of all owners of the vehicle for the purpose of monitoring or following an occupant or occupants of the vehicle.
> (B) It is an offense for a person who leases a motor vehicle to knowingly install, conceal, or otherwise place an electronic tracking device in or on the motor vehicle without the consent of the lessee of the vehicle.

Tenn. Code Ann. § 39-13-606(a)(1). The term "lease" as it is used in section 39-13-606 is defined as "the grant of use and possession of a motor vehicle for consideration, whether or not the grant includes an option to buy the vehicle[.]" Tenn. Code Ann. § 39-14-147(a)(1).

Section 39-13-606 is primarily a criminal statute, as a violation of the statute constitutes a Class A misdemeanor. Tenn. Code Ann. § 39-13-606(d). Appellant, however, seeks to enforce this statute as a private right of action. "A private right of action is the right of an individual to bring suit to remedy or prevent an injury that results from another party's actual or threatened violation of a legal requirement." ***Hardy v. Tournament Players Club at Southwind, Inc.***, 513 S.W.3d 427, 433 (Tenn. 2017) (footnote and citation omitted). "Some statutes provide a private remedy by their express terms; others define legal duties and 'are silent about whether an individual may bring suit to enforce them.'" ***Id.*** (citation omitted). Pursuant to Tennessee Code Annotated section 1-3-119, unless a private right of action was recognized prior to 2012, no statute confers a private right of action in the absence of express statutory language conferring such a right:

---

[6] Subsection (b) is not relevant to this case.

(a) In order for legislation enacted by the general assembly to create or confer a private right of action, the legislation must contain express language creating or conferring the right.

(b) In the absence of the express language required by subsection (a), no court of this state, licensing board or administrative agency shall construe or interpret a statute to impliedly create or confer a private right of action except as otherwise provided in this section.

(c) Nothing in this section shall be construed in any way to impair the ability of a court to:

(1) Recognize a private right of action that was recognized before July 1, 2012, by the courts of this state as arising under a statute, unless the statute is amended after July 1, 2012, to expressly bar the private right of action[.]

Subsection (a)(1)(B) prohibiting the nonconsensual placement of tracking devices on leased vehicles was not enacted until 2016. *See* 2016 Tenn. Laws Pub. Ch. 860 (H.B. 2095), eff. July 1, 2016.  As such, section 1-3-119 mandates that a private right of action must be expressly conferred or created by the statute in order for it to be privately enforced.

Appellant contends that a private right of action was indeed conferred by the legislature, citing Tennessee Code Annotated section 39-13-603:

(a) Except as provided in § 39-13-601(b)(4), any aggrieved person whose wire, oral or electronic communication is intentionally intercepted, disclosed, or used in violation of § 39-13-601 or title 40, chapter 6, part 3 may in a civil action recover from the person or entity that engaged in that violation the following relief:

(1) The greater of:

(A) The sum of the actual damages, including any damage to personal or business reputation or relationships, suffered by the plaintiff and any profits made by the violator as a result of the violation; or
(B) Statutory damages of one hundred dollars ($100) a day for each day of violation or ten thousand dollars ($10,000), whichever is greater;
(2) Punitive damages; and
(3) A reasonable attorney's fee and other litigation costs reasonably incurred.

Thus, like under the federal statute, Appellant is entitled to compensation if she can show that Appellee intentionally intercepted, disclosed, or used a wire, oral, or electronic communication in violation of the statutory scheme. And the fatal flaw in Appellant's claim is that tracking devices are once again exempted from the definition of electronic communications. Specifically, Tennessee Code Annotated section 40-6-303 provides

several definitions to be used in construing section 39-13-603. *See* Tenn. Code Ann. § 40-6-303 (stating that the definitions contained therein applied to "this part and §§ 39-13-601 – 39-13-603 unless the context requires otherwise"). Among these definitions is the following:

> "Electronic communication" means any transfer of signs, signals, writing, images, sounds, data or intelligence of any nature transmitted in whole or in part by the aid of wire, radio, electromagnetic, photooptical or photoelectronic facilities, but does not include:
> \* \* \*
> (C) Any communication from a "tracking device" as defined in 18 U.S.C. § 3117[.]

Tenn. Code Ann. § 40-6-303(7).

Here, Appellant cites the same basis for violation of section 39-13-606 as she cited as a violation of federal law: that Mr. Meade placed a tracking device on her loaner vehicle without her consent. But section 40-6-303 makes clear that this action does not involve an electronic communication. So Appellant has not alleged any use, interception, or disclosure of an electronic communication that would bring her within the ambit of section 39-13-603 for purposes of awarding her damages.[7] In the absence of allegations of this kind, her claim to compensation under section 39-13-606 must fail. The trial court therefore did not err in dismissing this claim.[8]

## C.

Appellant finally asserts that she is entitled to damages under the TCPA. One of the central purposes of the TCPA is to "protect consumers and legitimate business enterprises from those who engage in unfair or deceptive acts or practices in the conduct of any trade or commerce in part or wholly within this state[.]" Tenn. Code Ann. § 47-18-102(2). Under the TCPA,

> Any person who suffers an ascertainable loss of money or property, real, personal, or mixed, or any other article, commodity, or thing of value wherever situated, as a result of the use or employment by another person of an unfair or deceptive act or practice described in § 47-18-104(b) and declared to be unlawful by this part, may bring an action individually to

---

[7] And again, Appellant does not reference a wire or oral communication that was intercepted, disclosed, or used.

[8] Because we resolve this issue on Appellant's failure to allege the interception, use, or disclosure of an electronic communication, we need not resolve any dispute as to whether a lease was actually established here.

recover actual damages.

Tenn. Code Ann. § 47-18-109(a)(1). If the violation was willful or knowing, the court may award treble damages. Tenn. Code Ann. § 47-18-109(a)(3).

The TCPA delineates several actions that "are declared to be unlawful and in violation of [the TCPA]." Tenn. Code Ann. § 47-18-104(b). Three of these actions are at issue in this appeal:

> (12) Representing that a consumer transaction confers or involves rights, remedies or obligations that it does not have or involve or which are prohibited by law;
>
>          \*    \*    \*
>
> (14) Causing confusion or misunderstanding with respect to the authority of a salesperson, representative or agent to negotiate the final terms of a consumer transaction;
>
>          \*    \*    \*
>
> (21) Using statements or illustrations in any advertisement which create a false impression of the grade, quality, quantity, make, value, age, size, color, usability or origin of the goods or services offered, or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services[.]

*Id.* Tennessee courts have previously held that TCPA provisions of this type confer a private right of action. *See* ***Brown v. Tennessee Title Loans, Inc.***, 328 S.W.3d 850, 855 n.3 (Tenn. 2010) ("[T]he legislature expressly granted a private right of action in the TCPA."). *But see* ***Mini Sys. Inc. v. Alexander***, No. W2019-01871-COA-R3-CV, 2020 WL 6892010, at \*3 (Tenn. Ct. App. Nov. 24, 2020) (noting that unlike the other provisions, enforcement of subsection (27)'s catch-all provision, which is not at issue here, is vested exclusively with the office of the attorney general).

On appeal, Appellee's argument against these claims is two-fold. In addition to arguing that each claim fails individually, Appellee contends that all of Appellant's TCPA claims must fail because a repossession is not a consumer transaction protected by the TCPA. *See* Tenn. Code Ann. § 47-18-104(b)(12) (involving representations made in the course of "a consumer transaction"); (14) (involving confusion or misunderstanding as to authority related to "a consumer transaction"). The trial court agreed with this argument, citing ***Pursell v. First Am. Nat. Bank***, 937 S.W.2d 838 (Tenn. 1996), and ***Davenport v. Bates***, No. M2005-02052-COA-R3-CV, 2006 WL 3627875 (Tenn. Ct. App. Dec. 12, 2006).

In ***Pursell***, the Tennessee Supreme Court held the actions of a bank following

repossession of collateral securing a loan did not constitute a violation of the TCPA because the actions did not occur in the course of "trade, commerce, or a consumer transaction[.]" ***Pursell***, 937 S.W.2d at 841–42. The court noted, however, that its holding was "confined to the facts and circumstances of this case," and stated that it did "not, by this Opinion, generally exempt banking activities from the [TCPA]." ***Id.*** at 842. This Court followed ***Pursell's*** holding in ***Davenport*** and declined "the opportunity to extend the coverage of the Consumer Protection Act to this repossession." ***Davenport***, 2006 WL 3627875, at *18. Instead, we held that the TCPA "did not extend to a dispute arising over repossession of collateral securing a loan." ***Id.*** Based on these authorities, Appellee urges us to affirm the trial court's ruling that Appellant has no cognizable claim under the TCPA in this case.

Appellant's argument against the trial court's application of this caselaw is minimal at best. Specifically, Appellant argues that while the repossession was among the facts making up its claim, the true TCPA claim results from the events that led to the repossession: Appellee's decision to unilaterally change the terms of the parties' agreement. Still, we are somewhat reluctant to dismiss Appellant's claim in such broad strokes. For one, both ***Purcell*** and ***Davenport*** involved a repossession of property that served as collateral securing a loan. ***Davenport***, 2006 WL 3627875, at *18; ***Pursell***, 937 S.W.2d at 841–42. The allegations in this case make clear that no such secured loan was at issue here. Moreover, the Tennessee Supreme Court has recently cautioned that ***Pursell*** should not be read too broadly. Rather, the Court opined that "***Pursell*** cannot be interpreted to say that no collection activities are covered by the Act. Collection activities can be covered, provided they 'affect[ ] the conduct of any trade or commerce.' Tenn. Code Ann. § 47-18-104(a). This is a fact-intensive inquiry." ***Franks v. Sykes***, 600 S.W.3d 908, 915 (Tenn. 2020). However, because we conclude that each of the TCPA claims alleged by Appellant fails on its own merits, we need not address the trial court's conclusion that the TCPA was wholly inapplicable to this case. *See **Bobo v. City of Jackson***, 511 S.W.3d 14, 26 n.14 (Tenn. Ct. App. 2015) ("[W]e are entitled . . . to affirm the entry of summary judgment on grounds that differ from those forming the basis of the trial court's decision."). We will therefore consider each allegation in turn.

In addressing Appellant's allegations, however, we keep in mind that claims under the TCPA must meet the particularity requirements of Rule 9.02 of the Tennessee Rules of Civil Procedure. ***Glanton v. Bob Parks Realty***, No. M2003-01144-COA-R3-CV, 2005 WL 1021559, at *6 (Tenn. Ct. App. Apr. 27, 2005) (citing ***Harvey v. Ford Motor Credit Co.,*** 8 S.W.3d 273, 275-76 (Tenn. Ct. App. 1999); ***Humphrey v. West End Terrace, Inc.,*** 795 S.W.2d 128, 132 (Tenn. Ct. App. 1990)) (holding that TCPA "claims must be stated with the particularity of common-law fraud claims under Tenn. R. Civ. P. 9.02"). Rule 9.02 provides that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." "Despite Rule 9.02's particularity requirements, we must determine the sufficiency of the claims in light of Tenn. R. Civ. P.

8.01's liberal pleading standards."[9] ***Harvey***, 8 S.W.3d at 275–76 (citing ***Dobbs v. Guenther***, 846 S.W.2d 270 (Tenn. Ct. App. 1992)).

Appellant first alleged that Appellee violated subsection (12), which provides that it is a violation of the TCPA to represent that a consumer transaction confers or involves rights, remedies, or obligations that it does not have or involve or which are prohibited by law. Tenn. Code Ann. § 47-18-104(b)(12). On appeal, Appellant argues that the basis for this claim is that she believed that she "had a safe, secure and predictable arrangement based upon the promises of the management of [Appellee]. She did not, and the manifestation of that ambiguous setup by [Appellee] was the eventual illegal seizure of a vehicle which it had no right to seize without a Court order." According to Appellant, Appellee "falsely seduced" Appellant into "that position of assurance." In support of this argument, Appellant cites to pages 3–4, 8, and 12 of her complaint.

A review of these portions of Appellant's complaint does not reveal any particular misrepresentations made by anyone that are attributed to Appellee. Instead, Appellant alleges that the agreement she alleged was "established by conduct" rather than actual negotiations. Indeed, Appellant's complaint does not contain recitation of a single statement actually made by Appellee or its agents related to this purported agreement. And Appellant admits that whatever agreement was reached was "admittedly vague" and "indefinite."

Thus, this case is analogous to another case in which we held that the trial court correctly dismissed the plaintiff's TCPA claim:

> The exact misrepresentation(s) in this case are difficult to discern from the Complaint. While Appellants state that there were misrepresentations concerning the enforceability of partnership contracts and concerning the financial status and condition of the projects, the particular misrepresentations are not elucidated in the Complaint. Because the particular misrepresentations are not specifically set out in the complaint, it is also difficult (if not impossible) to determine which of the Appellees should be charged with these utterances. In short, without information as to what representations were made and by whom, these pleadings are vague and do not satisfy the liberal pleading requirements of Tennessee Rule of Civil Procedure 8.01 (for negligent misrepresentations), much less the heightened requirements of Tennessee Rule of Civil Procedure 9.02 (for intentional or fraudulent misrepresentations).

***PNC Multifamily Cap. Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev.***

---

[9] Rule 8.01 provides that a claim "shall contain (1) a short and plain statement of the claim showing that the pleader is entitled to relief, and (2) a demand for judgment for the relief the pleader seeks."

***Corp.***, 387 S.W.3d 525, 549 (Tenn. Ct. App. 2012). The same is true here. Appellant has alleged that the parties had an understanding based on conduct and that Appellee's conduct did not conform to her expectations under that agreement. But she simply has not alleged that Appellee or its agents made any representations concerning the rights, remedies, or obligations in that contract. And to the extent that she alleges she was to be provided an automobile of "comparable quality" she has not indicated who made that representation to her or what that individual's authority may have been. In other words, while Appellant appears to have certainly believed that her understanding with Appellee would continue indefinitely regardless of any breakdown in the relationship between herself and Mr. Meade, there is absolutely nothing in the complaint stating what statements or conduct by Appellee or its agents specifically induced Appellant to come to this conclusion. Indeed, Appellant's complaint focuses almost entirely on what Appellant believed, rather than what Appellee did to lead her to these purportedly false impressions. Under these circumstances, we must conclude that Appellant's complaint fails to meet the heightened pleading standard under Rule 9.02.

Appellant next contends that she may recover under subsection (14), which provides that it is unlawful for a defendant to cause confusion about the authority of a salesperson, representative, or agent, to negotiate the final terms of a consumer transaction. Tenn. Code Ann. § 47-18-104(b)(14). As noted above, Appellant's recitation of any conversations or negotiations with Appellee in the course of entering into the purported lease are few and far between. But even more importantly, Appellant's complaint contains no allegations that Appellee's actions caused her to be confused or to misunderstand *the authority* of any person connected with the transaction. Certainly, Appellant contends that the purported agreement was vague and unclear. But she simply has not alleged that Appellee engaged in any behavior to cause confusion about the authority of its employees or agents. As such, this claim lacks merit.

Finally, Appellant proceeds under subsection (21). This provision states that it is unlawful to use "statements or illustrations in any advertisement" that create a false impression of the goods or misrepresent the goods or services such that the buyer would not have chosen the goods or services. Tenn. Code Ann. § 47-18-104(b)(21). The flaw with Appellant's claim under this subsection is that nowhere in her complaint does she assert that her decision to use the automobile at issue was influenced by any advertisement made by Appellee or that she would have taken a different route in the absence of such advertisement.[10] Indeed, Appellant's complaint does not mention an advertisement of any kind. As Appellee points out in its brief, Appellant attempts to side-step this flaw by omitting the term "advertisement" from her quotation of the statutory provision at issue.[11]

---

[10] This Court has previously characterized subsection (21) as prohibiting a "bait and switch" type of scenario. ***Glanton***, 2005 WL 1021559, at *6.

[11] Appellant's quotation of this provision is as follows:

(21) … the creation of a false impression about the status of the parties' arrangement

- 15 -

While the TCPA should be construed liberally to protect consumers, *see Tucker v. Sierra Builders*, 180 S.W.3d 109, 115 (Tenn. Ct. App. 2005), we are simply not at liberty to ignore the words contained in a statute. *See Coleman v. State*, 341 S.W.3d 221, 241 (Tenn. 2011) (citing *In re C.K.G.*, 173 S.W.3d 714, 722 (Tenn. 2005)) ("[W]e may not overlook or ignore any of the words in a statute . . . ."); *see also Pursell*, 937 S.W.2d at 842 (holding that even in interpreting the TCPA, where "the language contained within the four corners of a statute is plain, clear, and unambiguous, there is no room for interpretation or construction, and we must apply the words of the statute"). In the absence of any allegation that an *advertisement* contained a misrepresentation or created a false impression, as required by the plain language of this subsection, this claim must fail. Thus, although we rely on different grounds than those cited by the trial court, we affirm the trial court's decision to dismiss Appellant's claims under the TCPA.

**D.**

As a final matter, Appellee seeks attorney's fees incurred in this appeal under three alternative theories. First, Appellee contends that it is entitled to damages incurred in defending against Appellants' TCPA claim under Tennessee Code Annotated section 47-18-109(e), which provides as follows:

> (1) Upon a finding by the court that a provision of this part has been violated, the court may award to the person bringing such action reasonable attorney's fees and costs.
> (2) In any private action commenced under this section, upon finding that the action is frivolous, without legal or factual merit, or brought for the purpose of harassment, the court may require the person instituting the action to indemnify the defendant for any damages incurred, including reasonable attorney's fees and costs.

As the Tennessee Supreme Court recently explained:

> This provision:
>
>> is designed to discourage consumers from using the [TCPA] to file frivolous or baseless claims. It is not intended to punish plaintiffs who can demonstrate wrongful acts on the part of defendants, but who are unable to prevail on their claims for other reasons. Too strict an application of this subsection

---

("or which may otherwise misrepresent the goods or services in such a manner that later, on disclosure of the true facts, there is a likelihood that the buyer may be switched from the advertised goods or services to other goods or services; …"

(Emphasis removed).

> would result in a "winner take all" situation, regardless of the circumstances, that would undermine the purpose of protecting the consumer.
>
> Glanton v. Bob Parks Realty, M2003-01144-COA-R3-CV, 2005 WL 1021559, at \*9 (Tenn. Ct. App. Apr. 27, 2005), perm. app. denied, (Tenn. Oct. 24, 2005). Therefore, the statutory phrase "'without legal or factual merit' does not mean without sufficient merit to prevail." Id. (quoting Tenn. Code Ann. § 47-18-109(e)(2)). Rather, it refers to a TCPA claim "so utterly lacking in an adequate factual predicate or legal ground as to make the filing of such a claim highly unlikely to succeed." Id.

*Milan Supply Chain Sols., Inc. v. Navistar, Inc.*, 627 S.W.3d 125, 160 (Tenn. 2021).

In a similar vein, Appellee asserts that this Court should award it attorney's fees incurred in defending against a frivolous appeal under Tennessee Code Annotated section 27-1-122, which provides as follows:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

"A frivolous appeal is one that presents no justiciable question, and which is so devoid of merit on its face, that there is no reasonable possibility that it can succeed." *Sadler v. Tennessee Bd. of Prob. & Parole*, No. M2001-02341-COA-R3CV, 2001 WL 1386090, at \*5 (Tenn. Ct. App. Nov. 8, 2001).

It is true that Appellant did not succeed in any of her arguments on appeal. However, we do not consider Appellant's claims so utterly lacking merit as to be frivolous. As such, we decline to characterize Appellant's claims either, under the TCPA or on appeal as a whole, as frivolous. We therefore decline to award damages and fees under either section 47-18-109(e) or section 27-1-122.

Appellee raises one additional claim to attorney's fees that is not based on frivolity: a claim for fees under Tennessee Code Annotated section 20-12-119(c), which provides in relevant part as follows:

> [I]n a civil proceeding, where a trial court grants a motion to dismiss pursuant to Rule 12 of the Tennessee Rules of Civil Procedure for failure to state a claim upon which relief may be granted, the court shall award the party or parties against whom the dismissed claims were pending at the time the

- 17 -

successful motion to dismiss was granted the costs and reasonable and necessary attorney's fees incurred in the proceedings as a consequence of the dismissed claims by that party or parties. The awarded costs and fees shall be paid by the party or parties whose claim or claims were dismissed as a result of the granted motion to dismiss.

Tenn. Code Ann. § 20-12-119(c)(1). Appellee notes that it requested these fees in the trial court following the dismissal of Appellant's complaint, but that pursuant to the statute, that claim has not yet been finally adjudicated. *See* Tenn. Code Ann. § 20-12-119(c)(3) ("An award of costs pursuant to this subsection (c) shall be made only after all appeals of the issue of the granting of the motion to dismiss have been exhausted and if the final outcome is the granting of the motion to dismiss. The award of costs and attorneys' fees pursuant to this section shall be stayed until a final decision which is not subject to appeal is rendered."). Regardless, Appellee asks this Court to award costs and fees incurred on appeal under this statute.

We cannot. Recently, this Court held that section 20-12-119(c) does not authorize attorney's fees based on appeal due to its intent to provide only limited relief to litigants. *See **First Cmty. Mortg., Inc. v. Appraisal Servs. Grp., Inc.***, No. W2020-01246-COA-R3-CV, ---S.W.3d---, 2021 WL 5561053, at \*9–10 (Tenn. Ct. App. Nov. 29, 2021), *perm. app. denied* (Tenn. Mar. 24, 2022). So regardless of the propriety of this request at this stage of proceedings, we are not permitted to award attorney's fees incurred on appeal under section 20-12-119(c).

## V.    CONCLUSION

The judgment of the Williamson County Circuit Court is affirmed, and this cause is remanded to the trial court for further proceedings in accordance with this Opinion. Costs of this appeal are taxed to Appellant Ashley Shearin Meade, for which execution may issue, if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 18 -