IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 3, 2024

**FRANK LOUIS v. PARMJEET SINGH ET AL.**

**Appeal from the Chancery Court for Rutherford County**
**No. 23CV-2083      Darrell Scarlett, Judge**

_____

**No. M2024-00385-COA-R3-CV**

_____

The trial court granted Appellees' respective motions averring that Appellant's lawsuit failed to state a claim against them. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed and Remanded**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which FRANK G. CLEMENT, JR., P.J., M.S., and JOHN W. MCCLARTY, J., joined.

Frank Louis, Murfreesboro, Tennessee, appellant, pro se.

Charles Michels and L. Gino Marchetti, Jr., Nashville, Tennessee, for the appellee, Brian Schmitt.

John H. Bedard, Jr., Duluth, Georgia, for the appellee, Parmjeet Singh.[1]

**OPINION**

**I. Background**

On November 8, 2022, Appellant Frank Louis procured a loan from American Heritage Credit Union ("AHCU"). Stream Financial ("Stream") is the Program Administrator for the AHCU loan. Mr. Louis used the proceeds from the loan to finance home improvements made by Power Home Remodeling Group, LLC ("Power"). The

---

[1] Although Mr. Singh filed a brief in this appeal, as stated therein, he "generally adopts, joins, and intends for [his] brief and arguments to be consistent with those asserted by [his] co-Appellee, Brian Schmitt."

"Loan and Security Agreements and Disclosure Statement," which was attached as Exhibit 1 to Mr. Louis' complaint, stated that loan proceeds would be disbursed only on Mr. Louis' signature on a "Borrower Payment Authorization." Exhibit 2 to the complaint was a "Summary of Loan Terms" provided by Stream and signed by Mr. Louis on November 8, 2022. This document provides:

SUMMARY OF LOAN TERMS

Congratulations on your approval with Stream Financial!

We are excited to partner with Power Home Remodeling Group to help you finance your home improvement project.

Below is a summary of your financing:

You have been approved for your project under the following terms:

Projected Loan Terms

| Project | AMOUNT | APR | TERM | PAYMENT |
|---------|--------|-----|------|---------|
| 36-23372 | $13,158.99 | 9.99% | 120 months | $173.82 |

*** BEFORE PROCEEDING, PLEASE READ THE FOLLOWING***

In the Truth in Lending Act ("TILA") Disclosure on your loan agreement, you will see the loan amount expressed as a maximum loan amount. The maximum loan amount is typically higher than the requested loan amount shown above. The maximum loan amount is offered in case you wish to make changes to your project that require more funds to complete.

You are not obligated to take the maximum loan amount stated in the TILA disclosure. Your funded loan amount will be the final project price with Power Home Remodeling.

You have been approved for a maximum loan amount with these terms:

Maximum Loan Terms

| AMOUNT | APR | TERM | PAYMENT |
|--------|-----|------|---------|
| $20,000.00 | 9.99% | 120 months | $264.19 |

Mr. Louis made no payment on the loan and denied any responsibility under the loan agreement. By letter of March 17, 2023, Stream's General Counsel notified Mr. Louis

that Stream had conducted an investigation, which revealed that Mr. Louis: (1) personally met with Power to purchase goods; (2) provided Power with a copy of his Tennessee driver's license; (3) personally signed the Loan Agreement; and (4) received the benefit of having new windows installed in his home. Stream further notified Mr. Louis that, based on its investigation, "a valid Loan Agreement exists between [Mr. Louis] and [AHCU]"; as such, Stream requested that Mr. Louis contact them "to setup payment arrangements for your Program loan which still has an outstanding balance of $13,158.99."

On October 19, 2023, Mr. Louis filed a "Verified Petition for Temporary Injunction" against "Parmjeet Singh, CEO at STREAM FINANCIAL, and Brian Schmitt, CFO at AMERICAN HERITAGE CREDIT UNION," while also filing a "Verified Bill in Equity" against the same parties on the same date. Despite Stream's March 17, 2023 letter listing the outstanding balance of the loan as $13,158.99, Mr. Louis averred that AHCU issued $20,000.00 to Stream, rather than $13,158.99. As such, Mr. Louis claimed that he was entitled to the following relief: (1) judgment for the difference between the $13,158.99 loan and the maximum approved loan amount; (2) that the $13,158.99 loan be marked paid in full; (3) $6,970.00 in adverse credit reporting fees; and (4) disgorgement of any proceeds received from the alleged $20,000.00 note. Mr. Louis claimed that, prior to filing the lawsuit, he "formally addressed Defendants, and more specifically, the above-named individuals, respectively," and that "Defendant Parmjeet Singh . . . continuously evaded all pertinent questions material in nature to [Mr. Louis'] material inquiries surrounding the agreement, accounting, transaction, underlying value, and handling of the Note . . . [and] Co-Defendant Brian Schmitt of AHCU silently acquiesced." Mr. Louis claimed that Messrs. Schmitt and Singh were in breach of contract, and he further asserted claims for conversion, unjust enrichment, breach of fiduciary duties, and defamation in relation to the November 8, 2022 loan.

On November 29, 2023, Mr. Singh filed an answer to Mr. Louis' complaint, wherein he asserted that, "Defendant Parmjeet Singh is the Chief Executive Officer of Stream Financial, LLC and was improperly named as an individual defendant in this matter." Because Mr. Louis "failed to name either Stream Financial, LLC or American Heritage Credit Union as parties to this action," Mr. Singh asserted that he could state no claim for relief. On December 6, 2023, Mr. Schmitt filed a Tennessee Rule of Civil Procedure 12.06 motion to dismiss Mr. Louis' complaint. Mr. Schmitt filed an amended motion on December 8, 2023. As grounds for his amended motion to dismiss, Mr. Schmitt asserted that:

> Frank Louis' ("Plaintiff") Complaint fails to allege that Schmitt participated in any of the acts alleged by Plaintiff and therefore Plaintiff fails to state a claim against Schmitt. If Plaintiff's intent is to sue American Heritage Credit Union ("AHCU"), then Plaintiff's Complaint fails in that the documents attached to and/or referenced in Plaintiff's Complaint establish that Plaintiff received exactly what he requested, a loan for $13,158.99, and Plaintiff

received a final Truth in Lending Act disclosure which establishes that AHCU paid $13,158.99 to Stream Financial on Plaintiff's behalf. Given that the entirety of Plaintiff's Complaint is premised on the allegation that Stream received $20,000 from AHCU, Plaintiff's Complaint fails to state a claim against both AHCU and Stream Financial.

On December 14, 2023, Mr. Singh filed a Tennessee Rule of Civil Procedure 12.03 motion for judgment on the pleadings, asserting the same grounds relied upon by Mr. Schmitt, *i.e.*, that Mr. Louis "failed to allege that Mr. Singh personally participated in any of the acts alleged by Mr. Louis in [his complaint] and, as a result, has failed to state a claim against him." Like Mr. Schmitt, Mr. Singh also asserted that Mr. Louis could state no claim against AHCU and Stream because Mr. Louis' complaint (and the attachments thereto) showed that he owed the $13,158.99.

Mr. Louis filed several additional motions, including: (1) a Motion to Deny Mr. Schmitt's Motion for Extension of Time to File Answer; (2) a Motion to Strike Mr. Singh's Pleadings; (3) a Motion for Default Judgment against Messrs. Singh and Schmitt; (4) a Motion to Strike Mr. Schmitt's Motion for Dismissal; (5) a Motion for In Camera Inspection and to Impose Sanctions; and (6) a "Motion in Support of Complainant's Default Judgment/Estoppel/Joinder for Adjudication." All pending motions were heard on February 2, 2024. By order of February 13, 2024, the trial court granted Mr. Singh and Mr. Schmitt's respective motions for dismissal and denied Mr. Louis' pending motions. On February 28, 2024, Mr. Louis filed a motion to vacate or set aside the trial court's February 13, 2024 order.[2] By separate order of February 29, 2024, the trial court granted Mr. Louis' motion for sanctions and ordered Mr. Schmitt to provide LifeLock credit-monitoring services for Mr. Louis for a period of three years due to Mr. Schmitt's divulging Mr. Louis' personal and sensitive information in certain court filings. On March 22, 2024, the trial court entered an order denying Mr. Louis' motion to alter or amend. He appeals.

## II. Issues

As set out in his brief, Mr. Louis raises the following issues for review:

A. Whether the Chancery Court incorrectly perceived appearance and defense by Agents & Principals when ruling on complainant's Oral default judgement motion.
B. Whether the Chancery Court erred in prematurely den[ying] complainant's written default judgement motion refusing complainant an opportunity to be heard on these distinct issues.

---

[2] Mr. Louis' motion stated that it was brought under Tennessee Rule of Civil Procedure 60; however, because the motion was brought within thirty days of the entry of the trial court's order, the trial court correctly treated Mr. Louis' motion as one for relief under Tennessee Rule of Civil Procedure 59.

C. Whether the Chancery Court erred in the consideration and granting of the responsive pleadings and motions as to the individuals.
D. Whether the Chancery Court erred in the handling of the dispositive motions submitted by the individuals.
E. Whether or not the rulings of the Chancery Court were largely inconsistent "with basic notions of fairness or fair process."
F. Whether the order filed 2/13/24 by the Chancery Court misrepresents the proceedings.
G. Whether the Chancery Court provided adequate remedy in the order granting identity theft and credit monitoring services consistent with it's prior ruling.

We restate the dispositive issues as follows:

1. Whether the trial court erred in the type of credit monitoring service it awarded as a sanction for Mr. Schmitt's including Mr. Louis' personal information in court filings.
2. Whether the trial court erred in denying Mr. Louis' motions for default judgment against Appellees.
3. If not, whether the trial court erred in granting Appellees' respective motions for dismissal of the lawsuit.

Appellees raise the additional issue of whether the trial court should have dismissed Mr. Louis' complaint with prejudice for failure to state a claim upon which relief can be granted against any person or entity.

## III. Discussion

### *Credit Monitoring*

As noted above, the trial court ordered Mr. Schmitt to provide Mr. Louis with LifeLock credit monitoring for three years. The trial court's order was in response to Mr. Louis' motion for sanctions against Mr. Schmitt as a result of Mr. Schmitt having divulged Mr. Louis' personal and sensitive information in certain court filings. As we have explained,

> [t]his Court reviews a trial court's choice and imposition of . . . sanctions under an abuse of discretion standard. *Pegues v. Ill. Cent. R.R. Co.*, 288 S.W.3d 350, 353 (Tenn. Ct. App. 2008) (citing *Alexander v. Jackson Radiology Assocs.*, 156 S.W.3d 11, 14 (Tenn. Ct. App. 2004)). "An abuse of discretion occurs where the trial court has applied an incorrect legal standard or where its decision is illogical or unreasoned and causes an injustice to the complaining party." *Id*. (citing *Mercer v. Vanderbilt Univ., Inc.*, 134 S.W.3d

- 5 -

121, 131 (Tenn. 2004)). The abuse of discretion standard does not allow this Court to substitute the panel's judgment for the judgment of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003) (citation omitted). We will reverse a trial court's decision to impose sanctions only if the court "has acted unreasonably, arbitrarily, or unconscionably." *Hodges v. Attorney General*, 43 S.W.3d 918, 921 (Tenn. Ct. App. 2000).

*Langlois v. Energy Automation Systems, Inc.*, 332 S.W.3d 353, 356 (Tenn. Ct. App. 2009).

From Mr. Louis' argument, we glean that there are three levels of LifeLock credit monitoring, *i.e.*, Standard, Ultimate Plus, and Advantage. Here, Mr. Louis was awarded LifeLock's "Standard" monitoring. He contends that the trial court erred because the "Standard" package includes monitoring by only one credit bureau, as opposed to three. However, Mr. Louis does not articulate how the trial court's decision was "illogical or unreasoned," and he does not state how credit monitoring from one bureau causes him an "injustice." *Id.* (citations omitted). From our review, the sanction imposed by the trial court was reasonable in view of the offense. There is no evidence that the trial court abused its discretion or otherwise "acted unreasonably, arbitrarily, or unconscionably." *Id.* (citations omitted).

Mr. Louis further contends that the trial court erred by entering an order submitted by Mr. Schmitt's counsel. However, Mr. Louis fails to note that Mr. Schmitt tendered three proposed orders, *i.e.*, one for each of the three tiers of credit monitoring offered by LifeLock. So, contrary to Mr. Louis' argument, the trial court did not merely defer to Mr. Schmitt's order granting LifeLock (Standard) monitoring. Rather, it chose between the three orders and, in doing so, made an independent decision that LifeLock (Standard) monitoring was sufficient to curtail any damage that might arise from Mr. Schmitt's disclosures. We find no abuse of discretion in this decision.

### *Default Judgment*

Tennessee Rule of Civil Procedure 55.01 provides for default judgment "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." The decision to enter or deny a default judgment is reviewed for abuse of discretion. *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 100 (Tenn.1984). This Court has explained the application of the abuse of discretion standard to decisions regarding default judgments as follows: "Under the abuse of discretion standard, a trial court's ruling will be upheld as long as reasonable minds can disagree as to the propriety of the decision made. . . . In the interests of justice, the courts have expressed a clear preference for a trial on the merits." *Decker v. Nance*, No. E2005-2248-COA-R3-CV, 2006 WL 1132048, at *2 (Tenn. Ct. App. Apr. 28, 2006) (internal citations omitted).

Tennessee Rule of Civil Procedure 12.01 provides, in relevant part:

A defendant shall serve an answer within 30 days after the service of the summons and complaint upon the defendant. . . . The service of a motion permitted under this rule alters these periods of time as follows, unless a different time is fixed by order of the court: (1) if the court denies the motion or postpones its disposition until the trial on the merits, the responsive pleading shall be served within 15 days after notice of the court's action. . . .

The record shows that Mr. Schmitt was served with Mr. Louis' complaint on October 30, 2023; Mr. Singh was served on October 31, 2023. Mr. Singh filed his answer on November 29, 2023, which was within the thirty-day time frame for filing an answer. Tenn. R. Civ. P. 12.01. Accordingly, as to Mr. Singh, there is no ground for default judgment.

As to Mr. Schmitt, on November 29, 2023 (the last day for filing an answer within the Rule 12.01 time period), he filed a motion for an extension of time to file his answer. In his motion, which was brought under Tennessee Rule of Civil Procedure 6.02, Mr. Schmitt requested a twenty-one-day extension, *i.e.*, to December 20, 2023, to file his answer. As grounds for the motion, Mr. Schmitt asserted that his "counsel recently obtained the file and needs additional time to go through the Complaint and documents with Defendant in order to properly respond to the Complaint." Mr. Louis opposed Mr. Schmitt's motion for extension of time, but the trial court ultimately granted it. On December 6, 2023, which was one week beyond the original time period for responsive filing, Mr. Schmitt filed his motion to dismiss.

Tennessee Rule of Civil Procedure 6.02 grants the trial court discretion in granting motions for enlargement of time, to-wit:

When by statute or by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may, at any time in its discretion, (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order . . . .

Accordingly, we review the trial court's grant or denial of a Rule 6.02 motion under the abuse of discretion standard. *See **Humphrey v. Humphrey***, No. 01-A-01-9802-CV-0010, 1999 WL 452318, at *3 (Tenn. Ct. App. July 1, 1999).

Turning to the record, at the February 2, 2024 hearing, the trial court allowed Mr. Louis to argue against Mr. Schmitt's motion for extension of time to file an answer, and it explained its reasons for granting the extension:

THE COURT: Okay. All right. So Mr. Louis, [Mr. Schmitt] asked, back in November, for an extension of time, and then he filed the motion to dismiss since then. So tell me what your position of this motion for extension is.

MR. LOUIS: Your Honor, the—there's an allotted period of 30 days to respond to process. And the only thing that we were given is the fact that the counsel had recently obtained the file. . . . The rule states, Your Honor, that there must be cause shown for this to be granted. And so I do not believe that they've met that burden as far as establishing any merit as to why the extension should be granted absent cause shown . . . . And so without any sort of understanding as to why they recently obtained the file and considering the fact that that's all that they provided in their motion to extend, I . . . move to deny the extension.

THE COURT: Well, the effect of that would be to ignore that they filed a pleading, what, seven days later, I think he said—

MR. LOUIS: Which was after the 30 days that it would have been—

THE COURT: No, I understand. But if I . . . deny that then I'm, essentially, going to have to grant the default. And it's going to be right back here in about 18 months, because the court of appeals is going to reverse it and say, "We want to be heard on the merits, not on this technical issue" . . . . So I'll go ahead and grant the motion to extend, but [Mr. Schmitt has] already filed a response. He's got the motion to dismiss. So . . . Yeah, and that happens a lot. Because people get served on day one, and they've got to call lawyers; meet with the lawyer, get their money together and do all that. It happens all the time. There's not been an unreasonable delay, because they've filed within 7 days of that 30 anyway. So I'm going to go ahead and let them—I think it's largely moot now, anyway, but to the extent it's not, I'll grant the motion for extension of time . . . .

The trial court's explanations for its decision are sound. Contrary to Mr. Louis' position, Mr. Schmitt did show cause why the extension of time was necessary. As set out above, as grounds for the motion, Mr. Schmitt's attorney asserted that he needed additional time to review the case with his client. At the February 2, 2024 hearing, Mr. Schmitt's attorney explained that,

This motion [for enlargement of time] was filed on the 30th day after service. Due to a mixup in my law firm, I just gotten it, signed the file that day, so I didn't have time to file a response. So I filed a motion requesting more time for that reason and then filed a motion to dismiss seven days later.

- 8 -

Although the attorney did not elaborate on what the "mixup in [his] law firm" was, there is no evidence that Mr. Schmitt's team delayed filing its answer for gamesmanship purposes. Furthermore, there is no evidence that Mr. Louis was prejudiced, and as noted above, courts have expressed a clear preference for a trial on the merits." *Decker*, 2006 WL 1132048, at *2. From the totality of the circumstances, we conclude that the trial court did not err in granting Mr. Schmitt's motion for extension to file his answer and denying the entry of a default judgment against him under Tennessee Rule of Civil Procedure 55.01.

### *Dismissal of Lawsuit*

A motion to dismiss tests "'only the legal sufficiency of the complaint, not the strength of the plaintiff's proof or evidence.'" *Elvis Presley Enters., Inc. v. City of Memphis*, 620 S.W.3d 318, 323 (Tenn. 2021) (quoting *Webb v. Nashville Area Habitat for Humanity, Inc.*, 346 S.W.3d 422, 426 (Tenn. 2011)). When considering a motion to dismiss, the trial court must determine whether the allegations of the complaint, if considered true, constitute a cause of action as a matter of law. *Id.* (citation omitted). The trial court "'must construe the complaint liberally, presuming all factual allegations to be true and giving the plaintiff the benefit of all reasonable inferences.'" *Webb*, 346 S.W.3d at 426 (quoting *Tigg v. Pirelli Tire Corp.*, 232 S.W.3d 28, 31-32 (Tenn. 2007) (quoting *Trau-Med of Am., Inc. v. Allstate Ins. Co.*, 71 S.W.3d 691, 696 (Tenn. 2002))) (additional citations omitted). It should grant the motion "'only when it appears that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief.'" *Id.* (quoting *Crews v. Buckman Labs. Int'l, Inc.*, 78 S.W.3d 852, 857 (Tenn. 2002)) (additional citations omitted). On appeal, we must also regard the allegations of the complaint as true. *Elvis Presley Enters.*, 620 S.W.3d at 323 (citation omitted). "The failure to state a claim upon which relief can be granted is determined by an examination of the complaint alone." *Cook v. Spinnaker's of Rivergate. Inc.*, 878 S.W.2d 934, 938 (Tenn. 1994). "A trial court's decision to grant or deny a motion to dismiss is a matter of law that we review de novo with no presumption of correctness." *Robinson v. City of Clarksville*, 673 S.W.3d 556, 566 (Tenn. Ct. App. 2023). "When reviewing orders granting a Tenn. R. Civ. P. 12.03 motion, we use the same standard of review we use to review orders granting a Tenn. R. Civ. P. 12.02(6) motion to dismiss for failure to state a claim." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct. App. 2003).

Before turning to the question of whether dismissal of Mr. Louis' lawsuit was warranted, we first note that Mr. Louis has represented himself throughout these proceedings. In *Vandergriff v. ParkRidge East Hospital*, 482 S.W.3d 545, 551 (Tenn. Ct. App. 2015), this Court explained that

> [p]arties who represent themselves (pro se litigants) are entitled to fair and equal treatment by the courts; nevertheless, "the courts must also be mindful of the boundary between fairness to a pro se litigant and unfairness to the pro se litigant's adversary." *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn. Ct.

- 9 -

App. 2003). Therefore, courts may "not excuse pro se litigants from complying with the same substantive and procedural rules that represented parties are expected to observe." *Id*. As we have explained:

> The courts give pro se litigants who are untrained in the law a certain amount of leeway in drafting their pleadings and briefs. Accordingly, we measure the papers prepared by pro se litigants using standards that are less stringent than those applied to papers prepared by lawyers.
>
> Pro se litigants should not be permitted to shift the burden of the litigation to the courts or to their adversaries. They are, however, entitled to at least the same liberality of construction of their pleadings that Tenn. R. Civ. P. 7, 8.05, and 8.06 provide to other litigants.

> *Id*. (internal citations omitted).

*Vandergriff*, 482 S.W.3d at 551. Tennessee Rule of Civil Procedure 8.05 provides, in relevant part, that "[e]ach averment of a pleading shall be simple, concise and direct." Tennessee Rule of Civil Procedure 8.06 requires that "[a]ll pleadings shall be so construed as to do substantial justice." So, while courts may excuse inartful drafting by pro se litigants, these litigants still are "held to the same procedural and substantive standards to which lawyers must adhere." *Brown v. Christian Bros. Univ.*, 428 S.W.3d 38, 46 (Tenn. Ct. App. 2013). Nonetheless, Tennessee Rule of Civil Procedure 12 motions "are not designed to correct inartfully worded pleadings." *Dobbs v. Guenther*, 846 S.W.2d 270, 273 (Tenn. Ct. App. 1992), *perm. app. denied* (Tenn. Jan. 19, 1993) (citation omitted). "[A] complaint should not be dismissed, no matter how poorly drafted, if it states a cause of action." *Id*. (citing *Paschall's, Inc. v. Dozier*, 407 S.W.2d 150, 152 (Tenn. 1966); *Collier v. Slayden Bros. Ltd. Partnership*, 712 S.W.2d 106, 108 (Tenn. Ct. App. 1985)). "Dismissal under Tenn. R. Civ. P. 12[] is warranted only when no set of facts will entitle the plaintiff to relief [ ], or when the complaint is totally lacking in clarity and specificity." *Id*. (citing *Pemberton v. Am. Distilled Spirits Co.*, 664 S.W.2d 690, 691 (Tenn. 1984); *Smith v. Lincoln Brass Works, Inc.*, 712 S.W.2d 470, 471 (Tenn. 1986)).

As noted above, Mr. Louis filed this lawsuit against Mr. Singh as "CEO at Stream Financial" and against Mr. Schmitt in his capacity as "CFO at American Heritage Credit Union." His contract is with Stream and AHCU, not with Mr. Singh or Mr. Schmitt. Nonetheless, throughout these proceedings, Mr. Louis has maintained that a suit against an individual in his capacity as an agent of a corporation results in a suit against the agent and corporation. It is axiomatic, however, that a plaintiff in a breach of contract lawsuit must file suit against the party with whom he or she has a contract. A claim for breach of contract requires "(1) the existence of an enforceable contract, (2) nonperformance amounting to a

- 10 -

breach of the contract, and (3) damages caused by the breach of the contract." ***C & W Asset Acquisition, LLC v. Oggs***, 230 S.W.3d 671, 676-77 (Tenn. Ct. App. 2007) (citing ***ARC LifeMed, Inc., v. AMC-Tennessee, Inc.***, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005)). Because there is no contract between Mr. Louis and his named defendants, he has failed to state a claim for breach of contract. Likewise, Mr. Louis fails to aver facts that would establish any fiduciary relationship between himself and Mr. Singh or Mr. Schmitt, and so he has failed to state a claim for breach of any fiduciary duty.

Turning to his claims for unjust enrichment and conversion, we observe that Mr. Louis' complaint states that Stream Financial "retained proceeds above and beyond the requested loan amount" and that Stream Financial "is evidenced to have received the full twenty thousand dollars ($20,000) in proceeds 'on behalf of' Complainant upon the transfer of the Note." Moreover, the complaint states that AHCU "is in possession of shares, interest, and possible deposits and dividends that it admits Complainant has given an interest in with no disclosure of its basis." Again, these allegations are lodged against "Stream Financial" and "AHCU," which are not named defendants. As such, Mr. Louis has failed to state a claim for either conversion or unjust enrichment.

Turning to Mr. Louis' defamation assertions, this Court has explained that

> the case law applicable to defamation, whether it be slander or libel, shows that in order to establish a prima facie case of defamation a plaintiff must establish that the defendant communicated defamatory matter to a third person with knowledge of its falsity or defamatory nature to the plaintiff, reckless disregard for the truth of the statement, or negligence in failing to ascertain the truth of the statement. ***Sullivan v. Baptist Memorial Hospital***, 995 S.W.2d 569, 571 (Tenn.1999) (citing Restatement (Second) of Torts § 580B (1977); ***Press, Inc. v. Verran***, 569 S.W.2d 435, 442 (Tenn.1978)); *see also* Restatement (Second) of Torts § 558 (1977). A plaintiff must also allege and prove that the defaming party communicated a false or defamatory statement concerning the plaintiff. *See* ***Pate v. Service Merchandise Co.***, 959 S.W.2d 569, 573 (Tenn.Ct.App.1997) (citation omitted); *see also* 50 Am. Jur. 2d Libel and Slander § 417, at 810 (2006); Thomas F. Daly, Defamation, in 19 Am. Jur. Trials 499, 537 (Charles S. Parnell & Milton Roberts eds., 1972).

***Steele v. Ritz***, No. W2008-02125-COA-R3-CV, 2009 WL 4825183, at *2 (Tenn. Ct. App. Dec. 16, 2009). The plaintiff is also required to prove actual damages in all defamation cases. ***Memphis Publ'g Co. v. Nichols***, 569 S.W.2d 412, 419 (Tenn.1978). Mr. Louis' complaint fails to meet these minimum pleading requirements as it concerns the named defendants. His claim for defamation is based on the furnishing and publication of a "false statement regarding the Complainant to and through third party credit reporting agencies." In relevant part, however, we observe that Mr. Louis' complaint states that Stream Financial "subsequent to their acquiescence, adversely reported Complainant to third party

credit agencies causing financial harm to Complainant." Again, Mr. Louis' allegations of defamation are based on actions by "Stream Financial" in reporting allegedly false statements to third-party credit reporting agencies. The complaint does not aver that either Mr. Schmitt or Mr. Singh defamed Mr. Louis, only that Stream Financial did. Stream Financial is not a party to this lawsuit, so Mr. Louis fails to state a claim for defamation.

Because Mr. Louis fails to state any claim for relief against his named defendants, Messrs. Singh and Schmitt, the trial court did not err in dismissing his lawsuit. Having determined that the trial court did not err in granting dismissal of the lawsuit, we pretermit discussion of any remaining issues or arguments as unnecessary to the adjudication of this appeal.

### *Appellees' Issue*

Before concluding, we briefly address Appellees' issue. Appellees assert that Mr. Louis' complaint should have been dismissed with prejudice as to any entity. As stated in Mr. Schmitt's brief:

> [R]egardless of whom Louis sued or whether Louis properly attempted to amend his Complaint, Louis' Complaint should be dismissed in its entirety for failure to state a claim as a matter of law. Louis simply made up a claim against Stream and AHCU in an attempt to avoid paying back the $13,158.99 loan to Stream. There is no value in continuing to consider Louis' meritless claims and therefore this matter should be dismissed with prejudice.

Ostensibly, Appellees ask us to preclude Mr. Louis from filing suit against AHCU and Stream. This we cannot do. As discussed above, neither AHCU nor Stream was named as a party to the lawsuit, and we take no position as to whether or not Mr. Louis could state a claim against AHCU and/or Stream.

### IV. Conclusion

For the foregoing reasons, the trial court's order dismissing Mr. Louis' lawsuit against Appellees is affirmed, and the case is remanded for such further proceedings as may be necessary and are consistent with this Opinion. Costs of the appeal are assessed to the Appellant, Frank Louis. Execution for costs may issue if necessary.

_s/ Arnold B. Goldin_
ARNOLD B. GOLDIN, JUDGE
